# United States Court of Appeals
## For the First Circuit

No. 12-2031

LOUIS PAOLINO; MARIE ISSA,

Plaintiffs, Appellants,

v.

JF REALTY, LLC; JOSEPH I. FERREIRA; ROBERT YABROUDY;
LKQ ROUTE 16 USED AUTO PARTS, INC., d/b/a Advanced Auto
Recycling; JOSEPH  I. FERREIRA, Trustee of The Joseph I.
Ferreira Trust,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard, Circuit Judge,
and Casper,[*] District Judge.

Michael J. O'Neill, with whom McGregor & Associates, P.C., was
on brief, for appellants.
Christopher M. Kilian was on brief for Conservation Law
Foundation, amicus curiae.
Robert Clark Corrente, with whom Christopher L. Ayers and
Burns & Levinson LLP, were on brief, for appellees.

March 13, 2013

---

[*] of the District of Massachusetts, sitting by designation.

**LYNCH**, **Chief Judge**.  This appeal presents an issue of first impression in the First Circuit as to the standard for measuring the sufficiency of the mandatory pre-suit notice which must be given at least sixty days before a citizen enforcement action may be brought under the federal Clean Water Act (CWA), 33 U.S.C. § 1251 et seq.  Failure to comply with the CWA's sixty-day notice requirement bars such an action and calls for dismissal of the suit.  See Hallstrom v. Tillamook Cnty., 493 U.S. 20, 32-33 (1989).

The required contents of pre-suit notice are prescribed in 40 C.F.R. § 135.3, and assessing whether these requirements have been met is a functional, fact-dependent, and case-specific inquiry.  Where the information contained in pre-suit notice identifies the potential plaintiffs, provides basic contact information, and allows the putative defendants to identify and remedy the alleged violations, we hold that these requirements have been satisfied and that the enforcement action may proceed.  This does not mean that the defendants are precluded from asserting defenses under Fed. R. Civ. P. 12(b)(6); only that the suit is not barred in the district court.

This holding requires us to find error in the district court's dismissal of this case.  We reverse, in part, and remand for further proceedings consistent with this opinion.

Plaintiffs Louis Paolino and Marie Issa appeal from a district court order dismissing with prejudice their most recent attempt to bring a citizen enforcement action against the defendants pursuant to 33 U.S.C. § 1365(a). Plaintiffs' two previous citizen suits were dismissed without prejudice due to defects in the service or contents of earlier pre-suit notices.[1]

An overview of the CWA, including its provisions governing citizen enforcement actions, helps to explain our conclusion. Congress adopted the CWA in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the CWA prohibits the discharge of any pollutant into navigable waters, id. § 1311(a), unless authorized by a valid National Pollutant Discharge Elimination System (NPDES) permit, id. § 1342. NPDES

---

[1] Plaintiffs originally filed suit in Rhode Island state court in 2006. After plaintiffs amended the complaint to include counts under the CWA, the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 et seq., and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., defendants removed the case to federal court and asserted that pre-suit notice was inadequate. On March 30, 2011, the court dismissed plaintiffs' federal claims without prejudice for failure to comply with the notice requirements of the various statutes invoked, and remanded the remaining state claims to the Rhode Island Superior Court. LM Nursing Serv., Inc. v. Ferreira, No. 09-CV-413-SJM-DLM, 2011 WL 1222894, at *9 (D.R.I. Mar. 30, 2011).
On June 6, 2011, plaintiffs filed a new federal complaint against the defendants in the District of Rhode Island, which was dismissed without prejudice by stipulation when notice was defective.

permits may be issued by the EPA or an authorized state, id. § 1352(a), (b); 40 C.F.R. § 123.25, and incorporate both state water quality standards and federal effluent limitations, 33 U.S.C. § 1342(a)(3), (b)(1)(A); 40 C.F.R. § 123.25.[2] In Rhode Island, the NPDES is administered by the Department of Environmental Management (DEM) through the Rhode Island Pollutant Discharge Elimination System (RIPDES) permit program. See, e.g., Approval of Rhode Island's NPDES Program, 49 Fed. Reg. 39,063, 39,063 (Oct. 3, 1984); Upper Blackstone Water Pollution Abatement Dist. v. EPA, 690 F.3d 9, 14-16 (1st Cir. 2012).

State and federal authorities are authorized to enforce the CWA through suit. 33 U.S.C. §§ 1319, 1342(b)(7). In addition, private citizens are given a more limited enforcement role. A citizen may bring a civil enforcement action in federal district court against an NPDES permit holder for failure to comply with that permit's conditions. 33 U.S.C. § 1365(a)(1) (authorizing citizen suits); see also id. §§ 1319(a)-(b), 1342(h)-(i) (describing state and federal enforcement actions for violations of

---

[2] States and the federal government share responsibility for achieving the CWA's purposes. States are primarily responsible for adopting ambient water quality standards within their territory, which designate, inter alia, acceptable levels for various hazardous materials. 33 U.S.C. § 1313(c)(2)(A). These standards, in turn, supplement technology-based effluent limitations, established by the Administrator of the EPA, on individual discharges of pollutants into navigable waters. See, e.g., 33 U.S.C. §§ 1311(b)(1)(A)-(C) & (e), 1312(a), 1313(d)(1)(A), (d)(2), (e)(3)(A).

discharge permit conditions). If the citizen prevails, the district court may award to him or her injunctive relief and attorneys' fees, and impose civil penalties on the defendant payable to the United States Treasury. Id. § 1365(a), (d); see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

At least sixty days before initiating such an action, however, a citizen plaintiff must give notice of the alleged violations to the state in which they occurred, the EPA Administrator, and the putative defendant(s). 33 U.S.C. § 1365(b)(1)(A). Additionally, no citizen suit may be brought if the "Administrator or State has commenced and is diligently prosecuting" an enforcement action for these alleged violations prior to the date on which the citizen files her complaint. Id. § 1365(b)(1)(B). In cases such as this one, with a long history of environmental enforcement at the site, this may impose a significant limitation on citizen suits. See, e.g., Piney Run Pres. Ass'n v. Cnty. Comm'rs Of Carroll Cnty., Md., 523 F.3d 453, 455 (4th Cir. 2008).

The CWA does not describe the service or contents of pre-suit notice, providing instead that "[n]otice . . . shall be given in such manner as the [EPA] Administrator shall prescribe by regulation." 33 U.S.C. § 1365(b)(2). These regulations are contained in 40 C.F.R. Part 135, and are discussed below.

In this case, the plaintiffs jointly own a five-acre property in the Town of Cumberland, Rhode Island. Their property sits downhill from and abuts the southwestern edge of a larger thirty-nine-acre property (the "Property") owned by defendant JF Realty, LLC, of which defendant Joseph I. Ferreira is the only member.[3] Since 1984, Ferreira has used or permitted others to use the Property to operate an automobile salvage and recycling business. The Property is currently leased for that purpose to the defendant LKQ Route 16 Used Auto Parts, Inc., and contains approximately 2,000 automobiles in various stages of recycling.

Plaintiffs filed this action in the District of Rhode Island on January 20, 2012. The complaint contains a single count, which alleges that the defendants are in continuing violation of CWA §§ 1311, 1313, and 1342 because (1) they do not have a valid RIPDES permit in the name of the actual owner and operator of the Property; and (2) they are continually discharging pollutants into United States waters at levels in excess of state water quality standards, federal effluent limitations, and other restrictions imposed by their RIPDES permit.

On October 7, 2011 -- more than ninety days before filing their complaint -- plaintiffs sent notice (the "Notice") of the

---

[3] In 1997, Ferreira transferred the Property to Joseph I. Ferreira, Trustee of the Joseph I. Ferreira Trust, which subsequently transferred the Property to JF Realty, LLC, the Property's current owner, in 2005.

alleged violations to the relevant parties, including each of the defendants, as required under 33 U.S.C. § 1365(b). Whether that Notice was properly served on each defendant is a separate issue which we address later. The Notice is fifteen pages long, and attaches and incorporates by reference an additional fifteen-page report prepared by an environmental consulting group on the plaintiffs' behalf.

Defendants filed their motion to dismiss the complaint on February 14, 2012, arguing that plaintiffs had failed to allege or establish several mandatory prerequisites to a citizen suit under the CWA. Specifically, defendants asserted that (1) plaintiffs' pre-suit Notice did not describe the alleged CWA violations with the specificity required under 40 C.F.R. § 135.3(a); (2) plaintiffs' service of the Notice on defendant Robert Yabroudy was defective under 40 C.F.R. § 135.2; and (3) plaintiffs did not mail an as-filed and date-stamped copy of the complaint to the EPA Administrator, EPA Regional Administrator, and U.S. Attorney General, as required by 40 C.F.R. § 135.4. Defendants also requested that the district court dismiss the complaint with prejudice based upon plaintiffs' previous failures to comply with the CWA's notice requirements.

The district court issued an order on July 26, 2012, dismissing the complaint under Fed. R. Civ. P. 12(b)(1) for lack of

subject matter jurisdiction.[4] Paolino v. JF Realty, LLC, C.A. No. 12-39-ML, 2012 WL 3061594 (D.R.I. July 26, 2012). It found that plaintiffs' pre-suit Notice suffered from each of the deficiencies alleged in the motion to dismiss, and agreed that a dismissal with prejudice was in order as to all defendants on the first ground. This timely appeal followed.

We limit our review to the sufficiency of plaintiffs' pre-suit Notice and the adequacy of service on defendant Yabroudy.[5]

II.

The primary issue on appeal is whether the district court erred in finding that the contents of plaintiffs' pre-suit Notice were insufficiently specific to satisfy the requirements set forth in 40 C.F.R. § 135.3(a). Our review of that determination is de novo. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 365 (1st Cir. 2001).

---

[4] Most courts to consider this issue have concluded that the CWA's pre-suit notice provisions at least implicate the subject matter jurisdiction of the federal courts. City of Newburgh v. Sarna, 690 F. Supp. 2d 136, 151-52 (S.D.N.Y. 2010) (collecting cases). Whether we treat the CWA's notice requirements as strictly jurisdictional or not, they remain mandatory conditions precedent to the filing of a citizen suit. See Alphas Co., Inc. v. Dan Tudor & Sons Sales, Inc., 679 F.3d 35, 40 (1st Cir.), cert. denied, 133 S. Ct. 652 (2012).

[5] The district court also found plaintiffs' pre-suit Notice deficient under 40 C.F.R. § 135.4, but did not conclude that this was an independent basis which would justify dismissing the case. Paolino, 2012 WL 3061594, at *7.

In _Gwaltney of Smithfield, Ltd._ v. _Chesapeake Bay Foundation, Inc._, 484 U.S. 49, 59-60 (1987), the Supreme Court explained that the CWA's pre-suit notice requirements serve two purposes, each related to the supplementary role Congress envisioned for citizen enforcement actions. First, pre-suit notice allows federal and state agencies to initiate their own enforcement action against an alleged violator, obviating the need for a citizen suit. _Id._ at 59-60; see also 33 U.S.C. § 1365(b)(1)(B) (barring citizen suits where "the Administrator or State has commenced and is diligently prosecuting" its own civil or criminal action). Similarly, the second purpose of notice "is to give [the alleged violator] an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." _Gwaltney_, 484 U.S. at 60; see also _Hallstrom_, 493 U.S. at 29 (relying on _Gwaltney_ in identifying same purposes for parallel notice requirements under the RCRA).

Congress entrusted to the EPA the task of determining what information a pre-suit notice letter would need to include in order to achieve these purposes. 33 U.S.C. § 1365(b). In the CWA's legislative history, Congress clarified that these implementing regulations "should not require notice that places impossible or unnecessary burdens on citizens but rather should be confined to requiring information necessary to give a clear

indication of the citizens' intent."  S. Rep. No. 92-414, at 80 (1971), <u>reprinted in</u> 1972 U.S.C.C.A.N. 3668, 3745.

Pursuant to these directives, the EPA adopted 40 C.F.R. § 135.3.  In the relevant part, § 135.3 states that pre-suit notice:

> shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

<u>Id.</u> § 135.3(a).

The key language in § 135.3(a) is that pre-suit notice must permit "the recipient" to identify the listed information, i.e., the specific standard at issue, the dates on which violations of that standard are said to have occurred, and the activities and parties responsible for causing those violations.  <u>See</u> <u>Pub. Interest Research Grp. of N.J., Inc.</u> v. <u>Hercules, Inc.</u>, 50 F.3d 1239, 1248 (3d Cir. 1995).  Our sister circuits are in relative agreement that this language indicates the appropriate measure of sufficiency under § 135.3(a) is whether the notice's contents place the defendant in a position <u>to remedy</u> the violations alleged.  <u>See, e.g.,</u> <u>S.F. BayKeeper, Inc.</u> v. <u>Tosco Corp.</u>, 309 F.3d 1153, 1158 (9th Cir. 2002) ("Notice is sufficient if it is specific enough 'to give the accused company the opportunity to correct the problem.'"

-10-

(quoting Atl. States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 819 (7th Cir. 1997))); Atl. States, 116 F.3d at 819-20 (finding that "notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit," and that "[t]he key to notice is to give the accused company the opportunity to correct the problem").  We agree.

The adequacy of the information contained in pre-suit notice will depend upon, inter alia, the nature of the purported violations, the prior regulatory history of the site, and the actions or inactions of the particular defendants.  For example, where, as here, the alleged violations concern the unlawful discharge of pollutants, several courts have found that only those discharges for which the notice identifies a particular pollutant will withstand a sufficiency challenge. Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 401 (4th Cir. 2011); Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 487-88 (2d Cir. 2001); see also Brod v. Omya, Inc., 653 F.3d 156, 169 (2d Cir. 2011) (same under RCRA notice requirements (citing Catskill, 273 F.3d at 487)).  Since that was done here, we do not decide whether it is always required.

Moreover, in many cases, there must be sufficient facts asserted about the mechanisms and sources involved in these unlawful discharges so that the defendants may take appropriate

remedial action.  Cf. Alt. States, 116 F.3d at 819-20 (finding earlier pre-suit notice sufficient for new violations alleged in amended complaint where the source of violations was adequately disclosed).

The CWA does not require, however, that a citizen plaintiff "list every specific aspect or detail of every alleged violation," or "describe every ramification of a violation." Hercules, 50 F.3d at 1248.  This is so because, "in investigating one aspect" of an alleged violation, "the other aspects of that violation . . . will of necessity come under scrutiny" by the putative defendant.  Id.  Thus, the Ninth Circuit has twice found that a notice letter alleging continuing unlawful discharges of pollutants need not list every date on which such discharges occurred.  Waterkeepers N. Cal. v. AG Indus. Mfg., Inc., 375 F.3d 913 (9th Cir. 2004); BayKeeper, 309 F.3d 1153.  In both cases, other information in the notice letter concerning the cause and source of the alleged discharges permitted the defendants to identify an adequate number of specific dates on which these discharges occurred and to take remedial action.  Waterkeepers, 375 F.3d at 917-18 (violations caused on "every rain event over 0.1 inches" (internal quotation marks omitted)); BayKeeper, 309 F.3d at 1159 (violations caused "on each day when the wind has been sufficiently strong to blow" pollutants into adjacent slough (internal quotation marks omitted)).  Similarly, the Third Circuit

in Hercules held that a sufficiently alleged discharge violation in pre-suit notice also informed the defendants of "any subsequently discovered monitoring, reporting or recordkeeping violation that is directly related to the discharge violation." 50 F.3d at 1248. "In short, the Clean Water Act's notice provisions and their enforcing regulations require no more than 'reasonable specificity.'" BayKeeper, 309 F.3d at 1158 (quoting Catskill, 273 F.3d at 488); Natural Res. Council of Me. v. Int'l Paper Co., 424 F. Supp. 2d 235, 249 (D. Me. 2006).

In the present dispute, the defendants launch an omnibus attack on the contents of plaintiffs' October 7 Notice letter. They assert that the Notice did not contain sufficient information to identify: (1) the specific standard or limitation at issue, (2) the activity alleged to have caused a violation of that standard or limitation, and (3) the particular defendant responsible for that violative activity.[6] The district court granted defendants' motion to dismiss on the first of these grounds, finding that the Notice "fail[ed] to provide sufficiently specific information for the recipients to identify which CWA standard is being violated." Paolino, 2012 WL 3061594, at *7.

---

[6] For the first time in their Response Brief, defendants assert that the contents of the Notice letter are also insufficient to identify the date and location of the alleged violations. Our discussion of the Notice's contents will demonstrate that, even if the defendants have not waived this argument, it is without merit.

Plaintiffs respond that this conclusion was erroneous in two respects: first, § 135.3(a) does not require that the pre-suit notice itself identify the specific standard at issue, but rather that it contain sufficient information to place the defendants in a position to do so; and second, even if it did, the Notice identifies the specific standard or limitation at issue throughout.

The information in plaintiffs' October 7 pre-suit Notice, as we soon describe, was at least adequate to allow the defendants to identify and remedy several of the alleged CWA violations. At the outset of the Notice, plaintiffs restate the basic allegations in the complaint, namely that defendants are in continuing violations of CWA §§ 1311, 1313, and 1342 because (1) their RIPDES permit is not in the name of the Property's current owner and operator, and (2) the Property is continually discharging pollutants into United States waters. Most of the Notice concerns the second of these allegations, and so we begin our discussion there.

On pages three and four of the Notice, plaintiffs describe in some detail the mechanisms through which they allege the Property is discharging pollutants into navigable waters. Specifically, the Notice states that in 1984 defendant Ferreira relocated a drainage ditch from the Property onto the plaintiffs' land, creating an "Intermittent Stream." This Intermittent Stream flows through the plaintiffs' property into the Curran Brook, which

eventually discharges into the Robin Hollow Reservoir--a source of drinking water for the City of Pawtucket, Rhode Island. The Notice asserts that defendants use the Intermittent Stream to drain a contaminated pond on the rear of the Property and to divert otherwise hazardous storm water runoff from the Property into the pathway leading to the Reservoir.

As to the specific pollutants at issue, the Notice also contains a three-page list of individual dates, from November of 2002 to September of 2011, on which reported measures or observations of hazardous materials on the Property, or in its runoff, exceeded allowable levels under Rhode Island water quality standards.[7] These entries vary in specificity, but none fails to identify a particular pollutant discharge said to be in violation of the terms of defendants' RIPDES permit. For example, the following is among the shortest entries in the list:

> 2. On March 11, 2004, runoff from the Property sampled by [the Pawtucket Water Supply Board], analyzed to contain 8 ug/l of MBTE (none allowed).

From this information alone, defendants can identify the pollutant at issue (methyl tertiary butyl ether), the purported standard

---

[7] The Notice also quotes the relevant language from defendant's RIPDES permit providing that violations of state water quality standards are unlawful, and cites additional authority in support of this proposition. See Santa Monica Baykeeper v. Int'l Metals Ekco, Ltd., 619 F. Supp. 2d 936, 947 (C.D. Cal. 2009).

under Rhode Island law (0 micrograms per liter), and the alleged violation (an amount of MBTE in excess of 0 ug/l).

Other entries on the three-page list note turbidity measurements in discharges from the Property said to exceed those on which Rhode Island's DEM based its March 2, 2010 Notice of Violation to the defendants.  Treating these allegations as accurate, defendants may identify the required information under § 135.3(a) by turning to the contents of this March 2 Notice.

In concluding that this list was insufficiently specific, the district court noted that "not one of the listed items identifies 'the specific standard [or] limitation' of the CWA that has allegedly been violated."  Paolino, 2012 WL 3061594, at *6 (alteration in original).  But given the other information which was provided, 40 C.F.R. § 135.3(a) did not require such identification.  The  information contained in the list permitted the defendants to identify these standards themselves and to remedy the alleged violations if accurate.  See Int'l Paper Co., 424 F. Supp. 2d at 249.

Plaintiffs' Notice letter also contains sufficient information for the defendants to identify and remedy the alleged violations arising from the Property's purportedly invalid RIPDES permit.  On pages six and seven, the Notice furnishes the relevant permit's identification number (Permit No. RIR 50M006), date of issuance (July 3, 2007), and original recipient (Joseph Ferreira

Trust).  It asserts that this permit is invalid on two grounds: first, the permit was issued to the Joseph I. Ferreira Trust in July 2007, which was not the Property's owner or operator at that time; and second, defendants' attempted transfer of the RIPDES permit to the Property's actual owner and operator in October 2010 did "not satisfy the requirements of [RIPDES Regulation Rule 22(b)]."  See 25-16 R.I. Code R. 14 § 22(b) (setting out requirements for RIPDES permit transfers to new property owners).

In addition to providing its own historical narrative describing these violations, the Notice also notes that the DEM independently attempted to resolve these issues in a September 23, 2010 letter addressed to defendant Robert Yabroudy of the Joseph I. Ferreira Trust.  As with the alleged enforcement proceedings concerning the property's turbidity levels, described above, the defendants may avail themselves of this letter, and any related enforcement proceedings arising from it, in identifying the particulars of the two grounds for invalidity.

Defendants also argue that, notwithstanding its specificity as to the nature and dates of the violations, the Notice "did not make any effort to identify the person or persons responsible for each alleged violation."  We disagree.  At a minimum, the information in the Notice did allow the defendants to determine each other's responsibility for the individual violations, as required under § 135.3(a).  As an example, from the

-17-

dates provided for the individual unlawful discharges in the three-page list, the defendants may determine who owned or controlled the Property at that time. Additionally, in describing the DEM's enforcement efforts on the Property, the Notice identifies the specific defendant whom the DEM treated as responsible for the issues addressed in the relevant notice letter. Rec. App'x at 35 (concerning DEM water quality violations: "On April 9, 2008, DEM issued a Notice of Intent to Enforce to the Joseph I. Ferreira Trust" and "On March 2, 2010, DEM issued a Notice of Violation to JF Realty LLC and Joseph Ferreira"); id. at 36 (concerning sampling and reporting violations: "On September 23, 2010, Eric Beck of DEM sent a letter to Robert Yabroudy of Joseph Ferreira Trust"). It is also worth mentioning that, in light of the Property's extensive history of changing hands amongst the defendants, they are in a much better position than the plaintiffs to determine their respective responsibilities during the dates in question. Cf. BayKeeper, 309 F.3d at 1158 (finding that "[the defendant] is obviously in a better position than [the plaintiff] to identify the exact dates, or additional dates" on which violations occurred).

For these reasons, we reverse the district court's dismissal for lack of subject matter jurisdiction with respect to plaintiffs' claims arising from the list of discharge violations and the invalid RIPDES permit. If on remand the plaintiffs press other claims, not discussed here, which fail to meet this test,

defendants may move to dismiss those claims.  Cf. Hercules, 50 F.3d at 1253 (remanding to the district court with instruction to "reinstate those discharge violations which are of the same type . . . as the discharge violations included in the plaintiffs' 60-day notice letter").  Nothing in this opinion precludes the defendants from raising other defenses under Fed. R. Civ. P. 12(b)(6).  See, e.g., Catskill, 273 F.3d at 485; Jones v. City of Lakeland, 224 F.3d 518, 520 (6th Cir. 2000).

## III.

The district court also held that, as to defendant Robert Yabroudy,[8] an independent basis for dismissal was that plaintiffs' service of pre-suit notice was defective under 40 C.F.R. § 135.2.  In the relevant part, § 135.2 states that service of notice on "individual[s] and corporation[s] . . . shall be accomplished by certified mail addressed to, or by personal service upon, the owner or managing agent of the building, plant, installation, vessel, facility, or activity alleged to be in violation."  40 C.F.R. § 135.2(a)(1).  We review the district court's factual findings concerning service on Yabroudy for clear error, and its ultimate legal conclusion based upon those findings de novo.  Gill v. United States, 471 F.3d 204, 205 (1st Cir. 2006).

---

[8] According to the Complaint, Yabroudy has represented to the DEM that he acts as treasurer for defendants Joseph I. Ferreira Trust and Advanced Auto Recycling.

There is no dispute that plaintiffs sent to each of the defendants by certified mail a copy of the Notice on October 7, 2011. Each of these copies was received and signed for by the relevant defendant, except for the Notice addressed to Yabroudy. That copy of the Notice was sent to the Property's street address, and returned by the post office with the parcel marked "Refused." Other boxes on the certified mailing form, such as "Attempted -- Not Known" and "Unclaimed," were not checked.

We cannot conclude that the district court erred in finding that this Notice was defective. In his April 20, 2010 deposition, Yabroudy provided to plaintiffs his personal and work addresses, both of which were different than the Property's address. Although plaintiffs maintain that Yabroudy continued to work at the Property after this date, this did not ensure that he would receive notice sent there.[9] At the very least, it was not clearly erroneous for the district court to conclude "that the notice . . . was not sent to Yabroudy at his residential or work address." Paolino, 2012 WL 3061594, at *5.

---

[9] Plaintiffs note that an earlier March 2011 notice letter in this litigation was successfully served on Yabroudy at the Property's address. This evidence, also before the district court, does not establish that the October 7 Notice was properly served, which must be independently shown. Cf. United States v. DuPont, 972 F.2d 337 (Table) (1st Cir. 1992) (finding undelivered notice to prior address effective where recipient failed to show sender's actual knowledge of new address).

Moreover, as the district court noted, it "[wa]s not required . . . to infer . . . that Mr. Yabroudy received and read the [Notice] Letter when it was delivered" based upon its being marked as "Refused." Id. (third alteration in original) (internal quotation marks omitted). The record does not reveal to whom at the Property the post office attempted to deliver the Notice addressed to Yabroudy. This case is not about the principle that a defendant may not render notice defective by refusing its delivery herself. See, e.g., Comm. on Grievances of the U.S. Dist. Court for the E. Dist. of N.Y. v. Feinman, 239 F.3d 498, 499 (2d Cir. 2001); Patmon & Young Prof'l Corp. v. Comm'r of Internal Revenue, 55 F.3d 216, 218 (6th Cir. 1995).

Finally, we reject plaintiffs' argument that neither the CWA nor § 135.2 prescribe the address to which notice must be sent for an individually named defendant, as if that negated the requirement of service of process. The CWA does state that a citizen suit may not be commenced "prior to sixty days after the plaintiff has given notice of the alleged violation . . . to any alleged violator." 33 U.S.C. § 1365(b)(1)(A) (emphasis added). Since the purpose of notice under the CWA is to provide the recipient with an opportunity to correct the violations alleged therein, see Gwaltney, 484 U.S. at 60, there is no reason to vary

the usual requirements.[10]  Accordingly, plaintiffs' CWA claims

against Yabroudy were properly dismissed.  See City of Newburgh v.

Sarna, 690 F. Supp. 2d 136, 153 (S.D.N.Y. 2010).

IV.

The judgment of the district court is reversed, in part,

and the case is remanded for further proceedings consistent with

this opinion.  No costs are awarded.

---

[10] Plaintiffs read our opinion in Valentin, 254 F.3d at 363-64,
to require that the defendants submit an affidavit from Yabroudy,
or other material of evidentiary quality, showing that Yabroudy did
not receive actual notice of their intention to file suit.  Not so.
Defendants' proffer of Yabroudy's deposition testimony, in
conjunction with the certified mailing form showing the Notice
addressed to Yabroudy had not been delivered, was enough to shift
the burden to the plaintiffs to prove that notice was effective.