[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11394
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-00094-TCB

JOHN W. MROSEK,
LEE M. MROSEK,

Plaintiffs - Appellants,

versus

CITY OF PEACHTREE CITY,
MAYOR DON HADDIX,
GEORGE DIENHART,
individually and as member of the Peachtree City Council,
ERIC IMKER,
individually and as member of the Peachtree City Council,
KIM LEARNARD,
individually and as member of the Peachtree City Council,
VANESSA FLEISCH,
individually and as member of the Peachtree City Council,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 17, 2013)

Before MARCUS, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

John and Lee Mrosek appeal the district court's order dismissing their complaint, without prejudice, for failure to satisfy the pre-suit notice requirements of the Clean Water Act of 1972 (CWA), 33 U.S.C. §§ 1251–1387.[1]  On appeal, the Mroseks first argue that their pre-suit notice letter to the defendants—Peachtree City, its mayor, and members of the city council—provided specific references to the legal standards which the defendants allegedly violated, and thus satisfied the CWA's notice requirement under 33 U.S.C. § 1365(b).  Second, the Mroseks claim that the notice standard applied by the district court was too strict, and is inconsistent with the actual intent of the CWA and its interpretation by our sister circuits.  After a thorough review of the briefs and the record, we reverse and remand for proceedings not inconsistent with this opinion.

---

[1] In addition to their request for injunctive relief under the CWA, the Mroseks also brought pendant state law claims for nuisance, a writ of mandamus, and declaratory judgment.

I.

In 1972, Congress enacted the CWA in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  "Section 402 of the Act, 33 U.S.C. § 1342, provides for the issuance, by the Administrator of the Environmental Protection Agency (EPA) or by authorized States, of National Pollutant Discharge Elimination System (NPDES) permits."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174, 120 S. Ct. 693, 701 (2000).  Such permits "impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters."  *Id.*, 120 S. Ct. at 701.  Non-compliance with an NPDES permit qualifies as a violation of the CWA.  33 U.S.C. § 1342(h).

When an alleged violation occurs, the CWA expressly authorizes citizens to bring suit against the alleged offender, including the United States, a government instrumentality or agency, or administrator.  *Id.* § 1365(a).  At least 60 days before filing a complaint, plaintiffs must notify the alleged violators of their intent to sue. *Id.* § 1365(b)(1)(A); *see Nat'l Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991) ("[T]he 60-day notice requirement of 33 U.S.C. § 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act.").  Pre-suit notice must contain

3

sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. 135.3(a). "The notice requirements are strictly construed to give the alleged violator the opportunity to correct the problem before a lawsuit is filed." *Nat'l Parks and Conservation Ass'n v. Tenn. Valley Auth.*, 502 F.3d 1316, 1329 (11th Cir. 2007). We review the sufficiency of pre-suit notice de novo. *Id.* at 1328.

## II.

We hold that the district court erred in concluding that the Mroseks' pre-suit notice was insufficient, as the Mroseks satisfied all the requisite components of pre-suit notice. *See* 40 C.F.R. 135.3(a). As a preliminary matter, the district court improperly concluded that the Georgia Stormwater Management Manual (the "Blue Book") and the Georgia Soil Erosion and Sedimentation Control Manual (the "Green Book"), which the Mroseks referred to in their pre-suit notice, had not been incorporated into Peachtree City's water management standards. To the contrary, Peachtree City's Notice of Intent (NOI)—under which it sought and

4

obtained a municipal NPDES permit from the state of Georgia[2]—explicitly states that

> [t]he City Engineering Department will inspect all publicly and privately owned BMPs (detention/retention ponds, impoundments, stormwater wetlands, etc.) at a rate of one third of the city per year, to determine if they are in proper working condition and if any maintenance is required. *The City will use the checklists in the Georgia Stormwater Management Manual to determine proper working condition.*

NOI App. E(B)(1) (emphasis added).[3]

Moreover, the city's Code of Ordinances dealing with Water Resource Protection explicitly incorporates the Blue Book—albeit interchangeably referred to as the "Stormwater Design Manual"—as the basis of many of the city's minimum standards and best practices, including its drainage, sedimentation control, and stormwater management. *See* Peachtree City, Ga., Code of Ordinances pt. II, app. B, art. X, § 1006(b)(1) ("All engineering design items for

---

[2] According to its website,

> City of Peachtree City is required by the Georgia Environmental Protection Division (EPD) to comply with the Phase 2 Regulations of the Federal Clean Water Act. What this means is that the City of Peachtree City was required by law to submit a Notice of Intent (NOI) to the EPD outlining how [it] intend[s] to clean stormwater to the maximum extent practicable. [That] NOI is approved and is in force . . . .

*See* Peachtree City, *Stormwater Management*, http://www.peachtree-city.org/index.aspx?NID=159 (last visited Aug. 26, 2013). Peachtree City updated its NOI in December 2011. *See id.*

[3] Peachtree City's official "Stormwater Management" website also explicitly states that "[t]he City has adopted the Georgia Stormwater Management Manual Volumes 1 and 2 . . . to manage redevelopment and new development." Peachtree City, *Stormwater Management*, http://www.peachtree-city.org/index.aspx?NID=159 (last visited Aug. 26, 2013).

storm drainage, soil erosion and sedimentation control . . . *shall meet the applicable minimum requirements of the Stormwater Design Manual*." (emphasis added)); *id.* § 1011(a)(6) ("The city will utilize the policy, criteria and information[,] including technical specifications and standards[,] *in the latest edition of the Georgia Stormwater Management Manual* and any relevant local addenda, for the proper implementation of the requirements of this ordinance." (emphasis added)).  Peachtree City's Code of Ordinances also incorporates the Green Book.  *See id.* § 1005.2(37) (stating that "properly designed" soil erosion, sedimentation, and pollution control mechanisms must be "[d]esigned in accordance with [the] . . . requirements and specifications contained in the 'Manual for Erosion and Sediment Control in Georgia'"); *id.* § 1005.4(c) ("The rules and regulations, ordinances, or resolutions adopted pursuant to [the Erosion and Sedimentation Act,] O.C.G.A. § 12-7-1[,] . . . shall require, as a minimum, . . . best management practices . . . which are consistent with and no less stringent than . . . the Manual for Erosion and Sediment Control in Georgia.").

Further, the Mroseks' pre-suit notice letter cites to "the specific standard[s], limitation[s], or order[s] alleged to have been violated."  40 C.F.R. 135.3(a).  The Mroseks correctly identify each of the Blue Book and Green Book provisions that support the alleged violations, as well as the state regulations promulgated in accordance with the Georgia Water Quality Control Act with which Peachtree

6

City, by its own ordinance terms, must comply. *See* Peachtree City, Ga., Code of Ordinances pt. II, app. B, art. X, § 1005.4(b)(3) ("Failure to . . . maintain best management practices shall constitute a violation of any . . . permit issued . . . pursuant to . . . the 'Georgia Water Quality Control Act.'"); *see also* O.C.G.A. § 12-5-40 ("The Board of Natural Resources is empowered to adopt such rules, regulations, and procedures to be followed in applying for state grants authorized in this article as shall be necessary for the effective administration thereof."). The Mroseks also describe the conduct alleged to have constituted those violations, as well as the specific dates and the continuing nature of the alleged violations. *See* Peachtree City, Ga., Code of Ordinances pt. II, app. B, art. X, § 1005.4(b)(3) ("Failure to . . . maintain best management practices shall constitute a violation . . . for each day on which such failure occurs.").

Finally, the Mroseks properly listed Peachtree City, its mayor, and the members of the city council in their pre-suit notice: the NOI explicitly makes the city responsible for stormwater management, and also lists the mayor as the "responsible official" for stormwater management and maintenance. In addition, the city council members make up the city's "governing authority," and are empowered to "[d]irect and control all property located within Peachtree City," as well as "[e]xamine, settle and allow claims against the City of Peachtree City." *See* Peachtree City, *Mayor and City Council*, http://www.peachtree-

7

city.org/index.aspx?NID=109 ("The governing authority of Peachtree City is the Mayor and City Council, consisting of five elected members who serve 4-year terms.") (last visited Aug. 26, 2013).

Because the district court erroneously concluded that the Mroseks' pre-suit notice was insufficient, we reverse and remand for proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**

JORDAN, Circuit Judge, concurring.

I join the court's opinion, and add the following thoughts.

First, the regulation setting forth the requirements for pre-suit notice—40 C.F.R. § 135.3(a)—does not require that the notice detail the "specific standard, limitation, or order alleged to have been violated." It only requires "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated." The Mroseks' notice satisfied this standard. As explained by cases like *Ecological Rights Foundation v. Pacific Gas and Electric Co.*, 713 F.3d 502, 518-19 (9th Cir. 2013), *Paolino v. JF Realty, LLC*, 710 F.3d 31, 36-38 (1st Cir. 2013), and *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819-20 (7th Cir. 1997), the notice need only put the defendant in a position to remedy the violations alleged. *See also Nat'l Parks and Conservation Ass'n v. Tenn. Valley Authority*, 502 F.3d 1316, 1329 (11th Cir. 2007).

Second, the pre-suit notice requirement does not require that the person complaining demonstrate to a factual or legal certainty that he will prevail. Success on the merits is something that can only be decided by a federal court after a lawsuit has been filed.

9