# United States Court of Appeals
## For the First Circuit

No. 15-1498

LOUIS PAOLINO; MARIE ISSA,

Plaintiffs, Appellants,

v.

JF REALTY, LLC; JOSEPH I. FERREIRA; ROBERT YABROUDY;
LKQ ROUTE 16 USED AUTO PARTS, INC., d/b/a/ Advanced
Auto Recycling; JOSEPH I. FERREIRA, Trustee of the
Joseph I. Ferreira Trust,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

Ronald L. Bonin, with whom Moretti Perlow & Bonin Law Offices,
was on brief, for appellants.
Robert Clark Corrente, with whom Whelan, Corrente, Kinder &
Siket LLP, was on brief, for appellees.

July 18, 2016

**TORRUELLA**, **Circuit Judge**.  This citizen enforcement action under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. ("Clean Water Act" or "CWA"), is the third such suit brought by Plaintiffs-Appellants Louis Paolino and his wife Marie Issa (collectively "Paolino-Issa") against the owner of a neighboring parcel of land and the business operating on it, Defendants-Appellees.[1]  It is only the latest in an inventive series of unjustifiable efforts to indict their neighbor's environmental practices.  We affirm the district court's judgment for Defendants-Appellees and award of attorneys' fees to the same.

## I.  The Facts

In 1983, Joseph I. Ferreira bought a thirty-nine-acre site (the "Property") in Cumberland, Rhode Island.  The Property

---

[1]  "Plaintiffs originally filed suit in Rhode Island state court in 2006.  After plaintiffs amended the complaint to include counts under the CWA, the Resources Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 et seq., and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., defendants removed the case to federal court and asserted that pre-suit notice was inadequate.  On March 30, 2011, the court dismissed plaintiffs' federal claims without prejudice for failure to comply with the notice requirements of the various statutes invoked, and remanded the remaining state claims to the Rhode Island Superior Court.  LM Nursing Serv., Inc. v. Ferreira, No. 09-CV-413-SJM-DLM, 2011 WL 1222894, at *9 (D.R.I. Mar. 30, 2011).  On June 6, 2011, plaintiffs filed a new federal complaint against the defendants in the District of Rhode Island, which was dismissed without prejudice by stipulation when notice was defective."  Paolino v. JF Realty, LLC, 710 F.3d 31, 34 n.1 (1st Cir. 2013).

is currently owned by JF Realty, LLC, ("JF Realty") of which Ferreira is the sole member, and is home to an automobile recycling business: LKQ Route 16 Used Auto Parts, Inc., d/b/a Advanced Auto Recycling ("LKQ"). In December 1985, Paolino bought a six-acre property (the "Paolino-Issa Property") abutting the Property for $40,000. The two properties were previously part of a larger parcel operated at various points as a pig farm and waste dump.

In the early 2000s, Paolino sold two half-acre parcels for development. The purchaser subsequently sued Paolino for failing to disclose that the Paolino-Issa Property was contaminated. Paolino then sought a tax abatement in 2003 "because of the contamination found on his property." Paolino was directed to remediate his property, but has not completed that process.

In March 2005, also as a result of the contamination pervading both properties, the Rhode Island Department of Environmental Management ("RIDEM") issued a Notice of Intent to Enforce ("NIE") to the then-operator of the Property, Advanced Auto Recycling ("Advanced Auto"), requiring it to (1) install controls to prevent stormwater runoff on the Property and (2) apply for a Rhode Island Pollution Discharge Elimination System ("RIPDES") permit for the Property. Ferreira's business manager, Robert Yabroudy, subsequently submitted an application to RIDEM

for the permits required by the NIE, naming the operator as Advanced Auto and the owner as the Joseph I. Ferreira Trust ("Ferreira Trust") although it appears[2] that at that point in time the Property was owned by JF Realty and operated by LKQ.[3] RIDEM would go on to issue the RIPDES permit to the Joseph I. Ferreira Trust in July 2007.

The stormwater management system that was installed on the Property would ultimately consist of two outfall pipes to drain various of the Property's surface areas, with large detention basins underneath to collect water and trap contaminants, set in the headwall facing Curran Road. The pipes drain into an outfall channel that eventually leads to Curran Brook. Construction of the system began in October 2007. During the construction LKQ received a second NIE on April 14, 2008. Defendants contracted a civil engineering firm, Commonwealth Engineers, to bring the

_____

[2] This is one of many points of temporal murkiness. The Complaint states that the permit request was filed on June 19, 2006, while the Answer claims the request was filed in June 2005. The Answer does not refute the claim that at the time of application the owner was JF Realty and operator was LKQ.

[3] Around the same time, in 2006, Paolino communicated to Yabroudy that he wanted Ferreira to purchase the Paolino-Issa Property for $250,000; Ferreira refused. Paolino-Issa subsequently filed their first lawsuit against the Defendants for the contamination of the Paolino-Issa Property and lodged complaints about the Property with RIDEM, the Environmental Protection Agency ("EPA"), the U.S. Attorney's Office, the police department, the Department of Business Relations, and U.S. Senator Sheldon Whitehouse. To this considerable barrage, they added a media campaign.

Property into compliance and ultimately completed the construction in October 2008.

RIDEM investigated numerous of Paolino-Issa's repeated complaints and notified them that they found all but one without merit. Paolino-Issa were notified in April 2008 that the discharge point for stormwater had been relocated and was not discharging stormwater onto their property.

On March 2, 2010, RIDEM issued a Notice of Violation ("NOV") to JF Realty informing them that an inspection on November 20, 2009, showed that pollutants were being discharged from the Property to Curran Brook in violation of the Rhode Island Water Pollution Act and RIDEM Water Quality Regulations. A $2,500.00 administrative penalty was imposed. RIDEM issued a letter on November 19, 2012, confirming the receipt of a check from JF Realty to pay the penalty and that all issues mentioned in the NOV were resolved, effectively releasing the NOV. Subsequent inspections in April 2014 found no additional violations and resulted in no additional enforcement actions or fines.

## II. **Procedural Background**

Paolino-Issa filed the current claim for injunctive relief and civil penalties against JF Realty, Ferreira, Yabroudy, LKQ, Advanced Auto, and Ferreira as trustee of the Ferreira Trust under the citizen suit enforcement provisions of the CWA on January

20, 2012, in the U.S. District Court for the District of Rhode Island, alleging that contaminated stormwater runoff from the Property was being discharged into United States waters, contaminating the Paolino-Issa Property, and that Defendants lacked a valid RIPDES permit. While the claim was originally dismissed on July 26, 2012, due to defective pre-suit notice, this court reversed the dismissal and remanded except as to claims against Ferreira's business manager, Yabroudy. Paolino v. JF Realty, LLC, 710 F.3d 31, 36, 40-42 (1st Cir. 2013). The deadline for Plaintiffs to submit expert disclosures was February 28, 2014. Although Plaintiffs provided disclosures for two expert witnesses on that date, Alvin Snyder and Dr. Robert Roseen, the latter's report was just thirty-two pages, some of which were stamped "DRAFT." Paolino-Issa subsequently submitted a request to supplement Roseen's report on June 13, 2014, which was, noted the district court, "more than three months after the Plaintiffs' expert disclosures were due, two weeks after expert discovery had closed, and after the Defendants had filed their motion for summary judgment, based, in part, on the information disclosed in Dr. Roseen's expert report." The second report was seventy pages. Despite a May deposition, neither Dr. Roseen nor Paolino-Issa had indicated any intention to revise or supplement the February report. The parties proceeded to trial, which took place over

seven days in August and September 2014, at which the district court permitted Roseen to testify only to the content of the initial report. The district court issued a memorandum of decision on November 19, 2014, concluding that Plaintiffs failed to meet their burden of proof.

On December 3, 2014, Defendants filed a motion for attorney's fees claiming: (1) that Plaintiffs went to trial without credible evidence; (2) Paolino conceded that RIDEM had investigated the Property and found his complaints lacked merit; and (3) neither RIDEM nor the EPA chose to intervene. Plaintiffs filed an objection to this motion, arguing that their action was not frivolous or unreasonable, that the lack of action by administrative agencies is not definitive, and that Defendants were seeking fees related to prior suits. On March 26, 2015, the district court ordered that the Plaintiffs pay $111,784.50, the total amount of fees charged by Defendants' counsel from June 30, 2014, the date by which extensive discovery had been completed and Plaintiffs had reviewed and responded to Defendants' motion for summary judgment, to October 29, 2014.

### III. The Excluded Expert Testimony

Paolino-Issa allege that the trial judge erred in excluding from evidence a portion of the expert testimony of Dr. Roseen as a result of Paolino-Issa's tardiness in filing Dr.

Roseen's revised expert report.  This claim faces a high bar and falls well short.

When reviewing a district court sanction regarding a discovery violation, this court will be deferential to the trial judge.  See Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003). When "a party aspires to disclose expert evidence out of time and the trial court opts to exclude it, we review that determination for abuse of discretion."  Santiago-Díaz v. Laboratorio Clínico y De Referencia Del Este, 456 F.3d 272, 275 (1st Cir. 2006).  Under the "abuse of discretion" standard, this court will not substitute its judgment for that of the district court unless left with a "definite and firm conviction that the court below committed a clear error of judgment."  Schubert v. Nissan Motor Corp. in U.S.A., 148 F.3d 25, 30 (1st Cir. 1998) (quoting In re Josephson, 218 F.2d 174, 182 (1st Cir. 1954)).

Under Federal Rule of Civil Procedure 26(e)(1):

> A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1). Pursuant to Rule 37(c)(1), reports that are not disclosed in a timely manner are automatically excluded and may not be used "to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In Esposito v. Home Depot U.S.A., Inc., this court stated that when reviewing a district court's decision to preclude expert testimony, it will consider: "(1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification . . . for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects . . . ; and (5) the late disclosure's impact on the district court's docket." 590 F.3d 72, 78 (1st Cir. 2009).

We find that, far from an abuse of discretion, the district court's decision to exclude the untimely supplement to Dr. Roseen's report passes the five-factor Esposito test easily. Regarding the history of the litigation, Paolino-Issa repeatedly missed deadlines for discovery and motions. See Esposito, 590 F.3d at 79. While Paolino-Issa contend that the information is crucial to their case, Paolino-Issa presented numerous other forms of evidence as well as nine other witnesses; moreover, Dr. Roseen was allowed to testify -- only the untimely portion of his report was excluded. Paolino-Issa claim their tardiness owed to

-9-

Defendants' refusal to permit them entry onto the property. But Paolino-Issa concede that they did not file a motion to obtain an order to inspect the Property -- as opposed to a request for entry -- until February 19, 2014, though experts' reports were to be disclosed by February 28. Moreover, Paolino-Issa did not retain Dr. Roseen until early February, further undermining Paolino-Issa's asserted justification for their tardiness. As to the fourth Esposito factor, as the district court noted, Paolino-Issa's motion to "serve a revised expert report [came] months after the deadline for expert disclosures had passed and only after the Defendants . . . had filed their motion for summary judgment." Defendants had already relied on the original report from Dr. Roseen in drafting their motion for summary judgment. To grant the request to supplement Dr. Roseen's report on June 13 would have substantially affected both Defendants, who had tangibly relied upon that initial disclosure, and the district court. See Santiago-Díaz, 456 F.3d at 277; Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197-99 (1st Cir. 2006).

Paolino-Issa's Esposito-based "fatal sanction" argument likewise fails. In Esposito, the plaintiff's "need for the expert was so great that the magistrate judge's decision to preclude the expert, although technically not a dismissal of Esposito's case, effectively amounted to one." 590 F.3d at 78. Granted, when

preclusion "carrie[s] the force of a dismissal, the justification for it must be comparatively more robust." Id. at 79; see Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). But here the preclusion of a portion of an expert witness's report in this case following discovery, rather than before a successful motion for summary judgment, did not constitute a de facto dismissal. Dr. Roseen was still allowed to testify, along with other witnesses, and the dismissal cannot be attributed to the exclusion of the supplement to Dr. Roseen's tardily tendered report. We thus find no abuse of discretion in the district court's decision to exclude the revised report.

## IV. **The Judgment**

We next address Paolino-Issa's contention that the trial judge's judgment for the Appellees was an error in toto and somehow against the great weight of the evidence presented at trial.

Pursuant to the CWA's citizen suit provision: "[A]ny citizen may commence a civil action on his own behalf -- (1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). Here, Paolino-Issa sought to prove Defendants violated the CWA by discharging pollutants from a point source into navigable waters

-11-

without a permit. 33 U.S.C. §§ 1311(a), 1342(a), 1362(12). Specifically, Paolino-Issa had to prove that water discharged from the stormwater system's outfall pipes into the mingled channel leading to Curran Brook contained pollutants.[4]

Upon review, this court may set aside the district court's findings of fact only if "clearly erroneous" and with due regard for the opportunity of the trial judge to determine the credibility of the witnesses. Fed. R. Civ. P. 52(a); see also Jackson v. Harvard Univ., 900 F.2d 464, 466 (1st Cir. 1990). Conversely, this court reviews legal rulings by the district court on a de novo basis. United States v. 15 Bosworth St., 236 F.3d 50, 53 (1st Cir. 2001).

In Anderson v. Bessemer City, the Supreme Court established that:

> [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

---

[4] Turbidity, as opposed to pollutant levels, does not bear on whether Defendants were in violation of the CWA or their permit, thus we do not address the issue of turbidity.

-12-

470 U.S. 564, 573-74 (1985). Here, the district court's order was clearly grounded in the record and reflected a more-than-plausible interpretation of that evidence. That court recounted the extensive procedural history, incorporating prior decisions; summarized the pertinent testimony of thirteen witnesses and the findings of facts corresponding to each[5]; reviewed the timeline of

[5] The district court reviewed evidence from (1) Christopher Lee, a field technician employed by Rhode Island Analytical Laboratories who took samples at the Paolino-Issa Property on December 23, 2013, and took a sample from the drainage channel located partially on the Paolino-Issa Property and no samples from the Property; (2) Alvin J. Snyder, registered professional engineer and the principal of Environmental Resource Associates, a company dedicated to environmental compliance and remediation, who made various visits to, and took various samples from, the Paolino-Issa Property between 2009 and 2013; (3) Harold Ellis, a former supervising environmental scientist with RIDEM, who only offered testimony relating to events that occurred thirty years or more before the complaint; (4) Louis R. Maccarone II, senior sanitary engineer at the RIDEM office of waste management, who sent a letter of responsibility to the Ferreira Trust on October 5, 2005, requiring the owners of the Property to conduct a full site investigation and bring the Property into compliance with regulations; (5) David D. Chopy, RIDEM's Chief of Compliance and Inspection, who confirmed receiving data from Snyder that appeared to demonstrate water quality violations but that could not be used because Snyder was hired by Paolino; (6) Paolino, co-owner of the Paolino-Issa Property, who saw oil sheen and turbidity in the water coming from the Property onto his, but also conceded that his complaints were investigated by RIDEM and were deemed to not have merit; (7) David Holzinger, operations manager for LKQ, who described the process of auto recycling at the LKQ facility, his obligation to collect stormwater samples every quarter, and the requirements to prevent contamination; (8) Yabroudy, business manager for Ferreira, who applied for a RIPDES permit on June 15, 2006, that named the Trust as the owner of the Property and Advanced Auto as the operator although Advanced Auto was dissolved in 2005 and the Property was conveyed to JF Realty; (9) Ferreira,

events based on testimony and evidence offered by both parties in relation to the CWA claim; and noted DEM's investigations, actions, and notifications.

The district court determined that the only evidence Paolino-Issa presented to show the stormwater system was discharging pollutants was overtly flawed. For example, Dr. Roseen's report significantly misapprehends the stormwater system's components and their functions. As Patrick Hogan of RIDEM noted in his testimony, all of Snyder's samples came from a

_____

who bought the Property in 1983 and serves as LKQ's plant manager and stated he had no direct involvement with RIDEM although he was aware of their notices and of how the stormwater management system was installed; (10) Dr. Roseen, a Ph.D. in civil engineering with a specialty in water resources engineering, who analyzed data collected by his staff from the Property in 2014 as to potential risks of contamination in light of the current system and reviewed maintenance records from 2007 to 2013; (11) Patrick Hogan, in charge of supervising the RIDEM Water Pollution and Septic Enforcement Program, who visited the Property on various occasions between 2008 and 2014 after receiving complaints from Paolino and sent an NOI to JF Realty after a March 2008 visit and an NOV following a November 2009 visit, but affirmed that JF Realty took the necessary steps to address both and informed Paolino, in response to continuing complaints, that a multimedia inspection found no violations; (12) Karen Beck, a Commonwealth Engineering employee, registered landscape architect, and wetlands scientist, who worked on the design of the Property's stormwater management system, obtained the necessary permits, and coordinated efforts by Commonwealth's engineers; and (13) Richard Lavengood, engineer and certified toxic use reduction planner, who is the principal of RELCO Engineering that prepared the stormwater management plan for LKQ, which included testing, training of personnel and dealing with incidents.

mingled water source, not directly from the Property or the Property's outfall pipes. As such, it is no stretch to affirm the district court's finding that Paolino-Issa failed to show the stormwater system was emitting pollutants.

Further, we note Paolino-Issa's CWA claim failed in another direction: 33 U.S.C. § 1251(a) exists to "restore and maintain the chemical, physical, and biological integrity of the [n]ation's waters." In the past, we have held that "[d]uplicative actions aimed at exacting financial penalties in the name of environmental protection at a time when remedial measures are well underway do not further this goal" and may be "impediments to environmental remedy efforts." N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552, 556 (1st Cir. 1991). "[W]hen it appears that governmental action under either the Federal or comparable State Clean Water Acts begins and is diligently prosecuted, the need for citizen's suits vanishes." Id. at 555; see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987). Here, ample evidence demonstrates RIDEM's ongoing involvement vis-à-vis the Property and responsiveness to Paolino-Issa's repeated complaints and oft-reiterated concerns, vitiating the premise that a citizen suit is necessary at all.

-15-

Finally, Paolino-Issa's add-on argument that JF Realty violated the CWA by failing to properly transfer the RIPDES permit is ill-founded. Paolino-Issa rely on New Manchester Resort & Golf, LLC, in which the U.S. District Court for the Northern District of Georgia established that the "CWA authorizes citizen suits for the enforcement of all conditions of a . . . permit." New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC, 734 F. Supp. 2d 1326, 1338 (N.D. Ga. 2010) (quoting Culbertson v. Coats Am., Inc., 913 F. Supp. 1572, 1581 (N.D. Ga. 1995)). However, it is important to distinguish, as JF Realty did, that the permit violations in dispute in that case were "failing to maintain best management practices, violating Georgia's in-stream water quality standards, and ignoring monitoring and reporting requirements." Id. at 1330. These substantive violations are hardly equivalent to a failure to properly notify RIDEM of a transfer of ownership, especially given that the both the transferor (the Ferreira Trust) and the recipient (JF Realty) were controlled by the same person, Ferreira; the identity of the current owner was known to RIDEM; and the current owner was complying with the relevant regulations.

## V. The Fee Award

At last, we turn to the question of attorney's fees. The CWA citizen suit provision states that: "The court, in issuing any final order in any action brought pursuant to this section,

-16-

may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). Attorney's fees may be awarded to a prevailing defendant if it is found that the "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 236 (1st Cir. 2010) (quoting Rosselló-González v. Acevedo-Vilá, 483 F.3d 1, 6 (1st Cir. 2007)). "Although determinations about whether to award attorney's fees are generally focused on the claims as they existed at the time the complaint was filed, 'fees also may be awarded on rare occasions where the plaintiff continued to litigate after [the claims] clearly became [frivolous, unreasonable, or groundless].'" Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 235 (1st Cir. 2012) (quoting Ortiz-Vélez, 630 F.3d at 241) (alterations and emphasis in original) (internal citations omitted). Here, again, we review for abuse of discretion, "thus we will not lightly substitute our judgment for that of the district court." Ortiz-Vélez, 630 F.3d at 236.

The district court here provided a detailed basis for awarding attorney's fees that precludes finding "a clear error of judgment." Schubert, 148 F.3d at 30 (quoting Josephson, 218 F.2d

-17-

at 182); cf. Ortiz-Vélez, 630 F.3d at 237. The district court reviewed relevant facts carefully and noted that Plaintiffs brought the current suit after Defendants installed a comprehensive stormwater management system per RIDEM, that "Paolino had been repeatedly informed by RIDEM that, with one exception, his complaints about the Property had no merit,"[6] and that Paolino-Issa's complaints generated various "site visits, a multi-media inspection, and extensive correspondence between RIDEM, EPA, and local authorities." The district court found that Paolino-Issa "refused to acknowledge the well-documented efforts made by RIDEM that caused the Defendants to alleviate environmental conditions on the Property."

The district court also noted Paolino-Issa's post-verdict attempt to seek an injunction to return the Property to its previous condition as a request to "undo beneficial changes to the Property at great expense to the Defendants" that was "wholly inconsistent with a citizen plaintiff who legitimately seeks to prosecute violations of the CWA for the public good." The district court further detailed Paolino-Issa's lack of diligence in pursuing the suit against Defendants, evidenced by waiting six

_____

[6] The one exception pertained to turbidity and thus did not justify this suit. See Paolino v. JF Realty, LLC, C.A. No. 12-039-ML, 2014 WL 6485842 at *8 (D.R.I. Nov. 19, 2014).

months to submit their written discovery requests, failing to provide adequate water samples on which to base their complaints despite pre-trial notice by RIDEM of the need to do so, allowing discovery and motion deadlines to pass, attempting to submit testimony of events that had occurred decades before relevant events, and failing to retain a water resources engineering expert to investigate, make findings, and produce a report on the Property until two weeks before the deadline for disclosure.

While the court concedes Plaintiffs may have had a reasonable claim in 2006, by 2012 the facts had changed considerably. In essence, the district court concluded, with good reason, that it is:

> abundantly clear that the Plaintiffs continued to engage in a bitter quarrel with the Defendants long after the Defendants had taken appropriate and RIDEM-approved measures to address any legitimate concerns the Plaintiffs might have raised in the interest of protecting public water resources and long after it became apparent that the Plaintiffs' case was unsupportable.

Moreover, the district court carefully detailed its reasoning as to the amount of the award. Although Defendants requested fees covering billing hours charged since August 7, 2009, the court noted that Defendants had failed to request attorney's fees in the prior two cases and limited its consideration of their request to the instant case. The court focused its inquiry on "[when] it

-19-

became clear that the Plaintiffs' claims against the Defendants were groundless," granting that "[i]t is not an easy task to pinpoint the exact moment at which it should have been apparent to the Plaintiffs that their continuing litigation lacked merit." Only after reviewing the procedural history and availability and persuasiveness of evidence and notifications throughout did the court determine that it was as of June 30, 2014, after the Plaintiffs had conducted "extensive discovery," engaged experts, and reviewed and responded to Defendants' motion for summary judgment, that "it was clear that further litigation against the Defendants was both unreasonable and groundless."

As the district court carefully detailed its analysis and the underlying factual basis for its conclusion, we see no ground for a finding of clear error or any basis under Schubert for this court to substitute its judgment for that of the district court.  148 F.3d at 30.

## VI.  Conclusion

The judgment of the district court is affirmed.

**AFFIRMED**.