**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 22, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID BENHAM,

     Plaintiff-Appellee,

v.

OZARK MATERIALS RIVER ROCK,
LLC,

     Defendant-Appellant.

No. 17-5069

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:11-CV-00339-JED-FHM)**
_____

Wilfred Wright, Claremore, Oklahoma, for Defendant-Appellant.

Krystina Phillips (Jason B. Aamodt and Dallas L.D. Strimple of Indian and
Environmental Law Group, PLLC, with her on the brief), Tulsa, Oklahoma, for Plaintiff-
Appellee.
_____

Before **BRISCOE**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

     Defendant-Appellant Ozark Materials River Rock, LLC, appeals from the

district court's order approving Plaintiff-Appellee David Benham's proposed

restoration plan of unlawfully filled wetlands in Saline Creek, <u>Benham v. Ozark</u>

Materials River Rock, LLC (Benham II), No. 11-CV-339-JED-FHM (N.D. Okla. June 1, 2017), ECF No. 184.  Ozark raises several issues on appeal challenging the district court's order and underlying findings of fact and conclusions of law, Benham v. Ozark Materials River Rock, LLC (Benham I), No. 11-CV-339-JED-FHM, 2015 WL 235759 (N.D. Okla. Jan. 16, 2015), ECF No. 160.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background

This appeal arises from a private enforcement action under Section 505 of the Clean Water Act (CWA), 33 U.S.C. § 1365.  Ozark is a sand and gravel mining company that operates on property adjacent to Saline Creek in Oklahoma.  Mr. Benham recreates in Saline Creek and claims that Ozark's operations have degraded his ability to do so.  In March 2011, Mr. Benham served Ozark with a notice letter pursuant to Section 505, informing the company that it was violating Section 404 of the CWA, 33 U.S.C. § 1344.  Section 404 requires a permit from the Army Corps of Engineers to discharge dredge or fill material into navigable waters if the activity disturbs more than one-half acre of wetland, and Ozark does not have a Section 404 permit.

The Army Corps of Engineers had inspected Ozark's operations in 2010 (and would do so again in 2012 and 2013) by driving through the property, but it found no CWA violations.  Nevertheless, after receiving Mr. Benham's notice, Ozark hired an environmental consulting firm to perform a Section 404 impact analysis of Ozark's

2

Saline Creek operations. By June 1, 2011, Ozark had not addressed the CWA violations that Mr. Benham alleged in his notice, so he filed the instant citizen suit, as authorized by Section 505.

The district court held a bench trial and issued findings of fact and conclusions of law determining that Ozark violated Section 404 by disturbing more than one-half acre of wetland through the discharge of dredge and fill material. Benham I, 2015 WL 235759, at *9. Specifically, the court found that Ozark's construction of a roadway in Saline Creek and the filling of its surrounding wetlands without a permit constitute a continuing violation of the CWA. Id. The district court imposed a civil penalty of $35,000 and ordered briefing on a restoration plan for the unlawfully filled wetlands. Id. at *10. On June 1, 2017, the district court issued an order adopting (substantially all of) Mr. Benham's proposed restoration plan. Benham II, slip op. at 1. One element of the plan created a conservation easement for the restoration site. Id. at 9–10.

## Discussion

Ozark raises six issues on appeal, contending that (1) Mr. Benham lacks Article III standing, (2) Mr. Benham's citizen suit notice letter was inadequate, (3) the district court erroneously found that Ozark violated the CWA, (4) the district court erroneously admitted evidence prepared by Ozark's withdrawn expert, (5) the district court's order is unconstitutional, and (6) Mr. Benham's suit falls within the primary jurisdiction of the

3

Army Corps of Engineers. For the following reasons, we reject Ozark's arguments and affirm.

A.     Mr. Benham Has Article III Standing

Whether a plaintiff has Article III standing is a jurisdictional question that we review de novo. Wilderness Soc'y v. Kane County, 632 F.3d 1162, 1168 (10th Cir. 2011). Article III standing requires showing (1) an "injury in fact" that is (2) "fairly traceable to the challenged action of the defendant" and is (3) likely to "be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 180. "The party invoking federal jurisdiction bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). At the final stage of litigation, the evidence produced at trial must adequately support the facts establishing standing. Id.

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Laidlaw, 528 U.S. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)). Here, Mr. Benham has shown injury in fact by maintaining that he regularly swims and fishes in Saline Creek and that his ability to do so has been diminished by Ozark's discharge of material into the creek and its surrounding wetlands. Such recreational impairments

4

constitute injury in fact for a plaintiff filing a citizen suit under the CWA. See id. at 181–83.

To satisfy the traceability requirement, the defendant's conduct must have caused the injury. Lujan, 504 U.S. at 560. Mr. Benham testified that the quality of Saline Creek did not begin to decline until after Ozark began its mining operations, and Mr. Benham's expert testified that Ozark's mining operations caused the degradation in quality. This, coupled with the district court's finding that Ozark unlawfully discharged materials into Saline Creek's wetlands, Benham I, 2015 WL 235759, at *7–9, sufficiently demonstrates that Mr. Benham's injury is fairly traceable to Ozark's unlawful actions.

Finally, the redressability element is handily met: the injunctive relief and civil penalties sought by Mr. Benham and ordered by the district court will restore the unlawfully filled wetlands and deter future violations. See Laidlaw, 528 U.S. at 185–86. Altogether, Mr. Benham has Article III standing to bring his citizen suit.

B.      Mr. Benham's Citizen Suit Notice Letter Was Adequate

Under Section 505 of the CWA, a plaintiff must provide notice of a violation before commencing a citizen suit. 33 U.S.C. § 1365(b) (2012). We review the adequacy of a citizen suit notice letter de novo. Karr v. Hefner, 475 F.3d 1192, 1196 (10th Cir. 2007). An adequate notice provides "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the

date or dates of such violation." Id. at 1200 (alteration in original) (quoting 40

C.F.R. § 135.3(a) (2006)). The purpose of this notice is to give an alleged violator of

the CWA "an opportunity to bring itself into complete compliance with the Act and

thus likewise render unnecessary a citizen suit." Gwaltney of Smithfield, Ltd. v.

Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987). A notice, then, must not

merely "generally orient[] the agency or violator as to the type of violation." Karr,

475 F.3d at 1200 (quoting Cal. Sportfishing Prot. All. v. City of West Sacramento,

905 F. Supp. 792, 799 (E.D. Cal. 1995)). Rather, "the notice's identification of the

alleged violations must be clear." Id.

In relevant part, Mr. Benham's notice provided:

> Discharges of dredged or fill material into waters of the United States may only occur if permitted by the Army Corps of Engineers (herein the "ACOE"). 33 U.S.C. § 1311(a); 33 U.S.C. § 1344(a). Waters of the United States, as defined in section 404, includes wetlands, which are areas "inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions." 33 C.F.R. § 328.3(b); see also U.S. v. Riverside Bayview Homes, 474 U.S. 121, 131–32 & n.8 (1985). Saline Creek is surrounded by wetlands. A significant portion of your mining operations have both dredged and filled these designated wetlands. See Attachment 2. The ACOE has no record of you being issued a section 404 permit for these dredge and fill activities.
> Any action which results in the filling of waters of the United States, including wetlands such as the ones you have filled, must be permitted through the ACOE. 33 U.S.C. [§] 1311(a); 33 U.S.C. [§] 1342. You have violated this section by placing large amounts of dirt, sand, and gravel into the center of Saline Creek without a permit in order to form a more convenient access road for [your] trucks. This road stretches underneath the S 4437 road and connects land owned by the Grand River Dam Authority with land owned by you. The attached photograph shows you filling this wetland on September 14, 2006. See Attachment 3. The location of your illegal discharges of fill material is

6

identified on the attached air photo at approximately the point labeled "l." See Attachment 2.

1 Aplee. Supp. App. 19. The notice describes the specific pollutants (dirt, sand, and gravel), specific locations (a road identified by description and aerial photograph), the specific sections of the CWA that were violated (33 U.S.C. §§ 1311(a), 1342, 1344(a)), and a specific date of a violation (September 14, 2006). These details provided Ozark with sufficient information to clearly identify the violation and thus constitute adequate notice. See Karr, 475 F.3d at 1201 (comparing cases and approving of a notice that listed "specific pollutants, specific locations, and specific permits the defendant was alleged to have violated").

Ozark also contends that the district court erred by allowing Mr. Benham to prosecute claims that were not identified in his notice. But Mr. Benham's notice specifically mentions the road created within Saline Creek. Accordingly, the district court's determination that Mr. Benham's "allegations regarding the roadway within Saline Creek and the filling of its surrounding wetlands are within the scope of the Notice Letter," Benham I, 2015 WL 235759, at *9, is fully supported.

C.     The District Court Did Not Clearly Err by Finding That Ozark Violated the CWA

We review the district court's legal conclusions de novo and its factual findings for clear error, giving great deference to credibility determinations. Raytheon Aircraft Co. v. United States, 590 F.3d 1112, 1118, 1120 (10th Cir. 2009). We may reverse only if the district court's finding "is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm

7

conviction that a mistake has been made." Aquila, Inc. v. C.W. Mining, 545 F.3d 1258, 1263 (10th Cir. 2008) (quoting Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1274 (10th Cir. 2001)).

After a bench trial, the district court found that the testimony of Mr. Benham's expert witness and the records regarding the existence of filled wetlands "establish that the half-acre threshold for filled wetlands requiring an individual permit has been surpassed" and that "Ozark has discharged dredge and fill materials into Saline Creek in excess of one-half of an acre without an individual permit as required under the CWA." Benham I, 2015 WL 235759, at *6–7. This finding came after the district court heard conflicting testimony at trial regarding the construction of the roadway in Saline Creek. Ozark's CEO testified that a neighboring landowner had built the road prior to Ozark's purchase of the land in 1991. Id. at *6. But one of the landowner's employees attested that the landowner did no such thing and that "he has observed Ozark employees maintaining, rebuilding, and driving on the road." Id. Further, Mr. Benham testified that Ozark began building the road in 2005 and extended it over time as it mined gravel, and the road can be seen in an aerial photograph taken in 2006 but does not appear in a photograph taken in 1991. Id. Based on this evidence, the district court found that "Ozark constructed the road by placing dredge and fill material into Saline Creek." Id. at *7. It found Mr. Benham's testimony credible because it was detailed and corroborated by photographs; by contrast, it found that the CEO's testimony "was often evasive and suffered from a lack of recollection as to key issues" and was contradicted by the testimony of the

8

neighboring landowner's employee.  Id.  The district court's findings are not clearly erroneous.

The district court then concluded that "Ozark's deposition of dredge and fill material in excess of . . . one-half acre . . . constitutes a continuing violation of Section 404 of the CWA that renders Ozark subject to liability."  Id. at *9.  It determined that Ozark's violation was "continuing" based on the premise that "[u]ntil a pollutant, such as fill material, that has been placed in a wetland is removed, its presence constitutes a continuing violation."[1]  Id. at *8 (citing Sasser v. Adm'r, U.S. EPA, 990 F.2d 127, 129 (4th Cir. 1993)).  Ozark does not contest this definition of a "continuing" violation; instead, it challenges the adequacy of factual support for such a finding.  Having reviewed the underlying support, we affirm the district court's conclusion that the roadway and filling of wetlands in Saline Creek constitute a continuing violation of the CWA.

D.     The District Court Did Not Abuse Its Discretion by Admitting Evidence Prepared by Ozark's Withdrawn Expert

We review a district court's admission of evidence for abuse of discretion. Prager v. Campbell Cty. Mem'l Hosp., 731 F.3d 1046, 1054 (10th Cir. 2013).  The district court's finding that Ozark violated the CWA was based, in part, on evidence created by Enercon, an environmental consulting firm that Ozark hired after

---

[1] Language from Justice Scalia's concurrence in Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987), supports such a ruling: "When a company has violated an effluent standard or limitation, it remains . . . 'in violation' of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation."  484 U.S. at 69 (Scalia, J., concurring).

9

receiving Mr. Benham's citizen suit notice letter. See Benham I, 2015 WL 235759, at *7 ("[T]he records regarding the existence of filled wetlands created by Enercon establish that the half-acre threshold for filled wetlands requiring an individual permit has been surpassed."). Ozark initially intended to call Enercon as an expert witness at trial but later changed its mind. On February 12, 2014, Ozark notified the court that it was withdrawing its expert. It also objected to several of Mr. Benham's trial exhibits that contained material previously obtained from Enercon on the basis that Federal Rule of Civil Procedure 26(b)(4)(C)–(D) protected the documents from disclosure. Ozark renewed its Rule 26 objections at trial and added that the exhibits were inadmissible hearsay; the district court overruled its objections.

Ozark's reliance on Rule 26 as a means of excluding expert material is misplaced. Rule 26(b)(4)(C) and (D) protect against the disclosure of attorney communications with testifying experts and facts known and opinions held by nontestifying experts, respectively. But while they protect against the discovery of this expert material, they have nothing to do with the admissibility of already-disclosed material. Mr. Benham states that he acquired the Enercon documents through an unopposed subpoena on August 19, 2012. If the documents contained attorney-expert communications, a Rule 26(b)(4)(C) objection would have been appropriate at that time. And had Ozark withdrawn its expert before the subpoena, a Rule 26(b)(4)(D) objection would also have been well founded. Nearly two years after disclosure, though, Rule 26(b)(4) provides no protection against admitting the documents as evidence at trial — even if Ozark no longer planned to call its expert as

10

a witness. Cf. SEC v. Koenig, 557 F.3d 736, 744 (7th Cir. 2009) ("Disclosure of the report ends the opportunity to invoke confidentiality.").

Additionally, Ozark has waived its hearsay argument by inadequately briefing the issue. Federal Rule of Appellate Procedure 28(a)(8)(A) requires an argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Ozark's brief mentions that the district court admitted the documents over Ozark's hearsay objection but offers no explanation for why this was erroneous. As a result, Ozark has waived its argument that the documents were inadmissible hearsay, see SCO Grp., Inc. v. Novell, Inc., 578 F.3d 1201, 1226 (10th Cir. 2009) ("An issue or argument insufficiently raised in a party's opening brief is deemed waived."), and we are unable to say that the district court abused its discretion by admitting them into evidence.

E.      Ozark Forfeited Its Constitutional Arguments

For the first time on appeal, Ozark argues that the district court's order of a conservation easement violates the Due Process and Takings Clauses of the Fifth Amendment. As Ozark did not raise this theory before the district court,[2] the theory was forfeited and our review of the district court's order is for plain error. See

---

[2] Ozark had the opportunity to raise this argument in its objection to Mr. Benham's proposed mitigation plan, Benham v. Ozark Materials River Rock, LLC, No. 11-CV-339-JED-FHM (N.D. Okla. Dec. 29, 2016), ECF No. 180, and its objection to Mr. Benham's supplement to his proposed mitigation plan, Benham v. Ozark Materials River Rock, LLC, No. 11-CV-339-JED-FHM (N.D. Okla. Jan. 26, 2017), ECF No. 183 — but did not.

Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011). But Ozark did not argue for plain error review in its brief, and "the failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court." Id. at 1131. Consequently, we decline to consider Ozark's constitutional arguments.[3]

F.     The District Court Did Not Abuse Its Discretion by Not Invoking the Primary Jurisdiction Doctrine

We review a district court's decision to invoke the primary jurisdiction doctrine for abuse of discretion. TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1239 (10th Cir. 2007). The primary jurisdiction doctrine allows courts to stay proceedings or dismiss an action without prejudice when "a decision by a court would threaten the uniformity of a regulatory scheme or require the court to confront issues of fact outside of its conventional experience" so that the parties can "seek a decision before the appropriate administrative agency." S. Utah Wilderness All. v. Bureau of Land Mgmt., 425 F.3d 735, 751 (10th Cir. 2005). Here, there are no threats to the uniformity of a regulatory scheme or issues outside the conventional experience of the courts. In fact, Section 505 of the CWA explicitly contemplates that district courts have jurisdiction to hear citizen suits. See 33 U.S.C. § 1365. Accordingly, the district court did not abuse its discretion by refusing to stay proceedings or dismiss the action without prejudice under the primary jurisdiction

_____

[3] At oral argument, the parties were uncertain of the conservation easement's duration. Our disposition does not prevent the parties from seeking clarification from the district court on this issue.

12

doctrine. See Raritan Baykeeper v. NL Indus., Inc., 660 F.3d 686, 695 (3d Cir. 2011) (noting that the primary jurisdiction doctrine would apply to CWA citizen suits only in exceptional cases, such as where a suit would disrupt a formal administrative proceeding).

Though framed as a primary jurisdiction issue, the essence of Ozark's argument is that Mr. Benham should be prohibited from bringing his citizen suit because the Army Corps of Engineers is primarily responsible for the enforcement of the CWA. While it is true that Section 505 would prohibit Mr. Benham's suit if the Corps were "diligently prosecuting" an enforcement action, see 33 U.S.C. § 1365(b)(1)(B), the facts presented at trial show that the Corps was not diligently pursuing an enforcement action against Ozark. The district court found that the Corps had conducted several inspections of Ozark's operations by driving through the property and had concluded each time that there were no CWA violations. Benham I, 2015 WL 235759, at *4. Consequently, the Corps was not diligently prosecuting an enforcement action, and Mr. Benham was entitled to bring his citizen suit.

For the first time on appeal, Ozark argues that the CWA violation in the instant case covers the same set of facts as a 2005 violation. As an action for a "wholly past" violation would deprive the court of subject matter jurisdiction, see Gwaltney, 484 U.S. at 64, this argument can be made at any stage of the litigation, see Champlin Petroleum Co. v. Ingram, 560 F.2d 994, 996 (10th Cir. 1977). However, even assuming that Mr. Benham's suit overlaps with the 2005 violation (which Mr.

13

Benham contests), this is not an action for a "wholly past" violation. Rather, the district court found that Ozark's deposits of dredge and fill material constitute a "continuing" violation of the CWA, Benham I, 2015 WL 235759, at *9, over which a federal court has subject matter jurisdiction, see Gwaltney, 484 U.S. at 59. Consequently, the district court properly exercised jurisdiction over Mr. Benham's citizen suit.

Ozark also attempts to frame its primary jurisdiction argument as a ripeness issue, contending that the Army Corps of Engineers has not made a final agency determination regarding the delineation of wetlands in Saline Creek. But Mr. Benham is not an "affected party" subject to the Corps's exhaustion of administrative remedies provision. See 33 C.F.R. §§ 331.2, 331.12 (2017). Moreover, Section 505 contains the "diligently prosecuting" requirement, not an administrative exhaustion requirement. And the evidence shows that the Corps was not diligently prosecuting an enforcement action against Ozark. The Corps's CWA enforcement responsibilities therefore have no bearing on whether Mr. Benham was able to bring suit in this case.

In sum, the district court had jurisdiction over Mr. Benham's citizen suit, and invoking the primary jurisdiction doctrine would not have been appropriate.

AFFIRMED.