PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2060
_____

SHARK RIVER CLEANUP COALITION,
                                        Appellant

v.

TOWNSHIP OF WALL; ESTATE OF FRED MCDOWELL,
JR.
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 3-17-cv-08049
District Judge:  Honorable Brian R. Martinotti
_____

Argued June 16, 2022

Before: HARDIMAN, SMITH, and FISHER, *Circuit Judges*

(Filed: August 24, 2022)

John P. Brennan, Jr.          [ARGUED]
Suite 1
227 East Bergen Place
Red Bank, NJ 07701
        *Counsel for Appellant*

M. James Maley, Jr.
Erin E. Simone               [ARGUED]
MALEY GIVENS
1150 Haddon Avenue
Suite 210
Collingswood, NJ 08108
        *Counsel for Appellee Township of Wall*

John J. Novak                [ARGUED]
3 Franklin Avenue
Toms River, NJ 08753
        *Counsel for Appellee Estate of Fred McDowell, Jr.*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

The Clean Water Act empowers citizens to sue for violations of the Act, 33 U.S.C. § 1365(a)(1), subject to one key condition. Before going to federal court, a citizen-suit plaintiff must "give[] notice of the alleged violation" to the

2

"alleged violator," and also to the U.S. Environmental Protection Agency and to the state in which the alleged violation occurs. 33 U.S.C. § 1365(b)(1)(A). Once the plaintiff has provided the required notice, it must wait sixty days before suing. *Id.*; *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 23 n.1, 26 (1989) (in holding that the Resource Conservation and Recovery Act's notice requirement "is a mandatory, not optional, condition precedent for suit," referencing its Clean Water Act analogue at 33 U.S.C. § 1365(b)).

The sixty-day period following notice "gives the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit.'" *Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1246 (3d Cir. 1995) (quoting *Hallstrom*, 493 U.S. at 29). But if the alleged violation continues notwithstanding the notice, the statutory regime authorizes a "citizen suit [as] the vehicle to achieve compliance." *Id.*

The parties to the citizen suit before us do not dispute whether Plaintiff Shark River Cleanup Coalition, a non-profit citizen's group, delivered a notice letter alleging a Clean Water Act violation. Rather, they contest whether the *contents* of the Cleanup Coalition's Notice satisfy the more granular

3

requirements set forth by EPA regulation.[1]    Under the applicable regulation,

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, *shall include sufficient information to permit the recipient to identify* the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a) (emphasis added).

In *Hercules*, we read the plain text of the regulation[2] as requiring notices to provide "enough information to enable the *recipient*"—here, Defendants Township of Wall and the Estate of Fred McDowell, Jr.—to identify "the components of an alleged violation."  50 F.3d at 1248 ("We read the regulation to require just what it says[.]").  Thus, although we observed in *Hercules* that it would have been "helpful" to the defendant if the plaintiff's notice had provided more "detailed information"

---

[1] *See* 33 U.S.C. § 1365(b) ("Notice under this subsection shall be given in such manner as the Administrator [of the EPA] shall prescribe by regulation.").

[2] The text of 40 C.F.R. § 135.3(a) is unchanged since we interpreted it in *Hercules*.

4

regarding the alleged violation, we held that "such specificity [wa]s not mandated by the regulation." *Id.* at 1247. Following the principles we articulated, several of our sister courts of appeals have also concluded that citizen-suit plaintiffs need not "list every specific aspect or detail of every alleged violation." *Paolino v. JF Realty, LLC*, 710 F.3d 31, 38 (1st Cir. 2013) (quoting *Hercules*, 50 F.3d at 1248); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 400 (4th Cir. 2011) (quoting same language); *Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 917 (9th Cir. 2004) (same).

In this case, the District Court erred under *Hercules* by requiring the Cleanup Coalition to provide more than what was "enough" information for Defendants to identify the location of the alleged violation. 50 F.3d at 1248. Yet the Cleanup Coalition's Notice was deficient on another ground: It did not "include sufficient information to permit [Defendants] to identify the specific standard, limitation, or order alleged to have been violated[.]" 40 C.F.R. § 135(a). Accordingly, we will affirm the District Court's dismissal of the Cleanup Coalition's citizen suit.[3]

---

[3] The District Court had jurisdiction over this citizen suit pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a). We have jurisdiction over the Cleanup Coalition's timely appeal under 28 U.S.C. § 1291.

5

I

A.

In 1991, Wall Township recorded with the Monmouth County Clerk's Office an Amended Declaration of Taking, establishing by eminent domain a "permanent" subterranean easement on the property of the Estate that was to be used for an underground municipal sewer line system.  JA-V1 00426. The Declaration described "a strip of land 25.00 feet in width" and "containing 3.5 acres," JA-V1 00436, delineated by metes and bounds, and spanning a total distance that we will assume adds up to three miles.[4]  The Estate's nearly 500-acre property

---

[4] The Township asserted in its summary judgment filings that the easement is three miles long, a distance more favorable to its case than its candid admission on appeal that it is in fact 6,000 feet long.  And the Cleanup Coalition did not object to the Township's earlier assertion before the District Court.

Because the District Court relied on the Township's representation, *Shark River Cleanup Coal. v. Twp. of Wall*, No. 17-8049, 2021 WL 1712310, at *7 (D.N.J. Apr. 30, 2021) ("the undisputed contents of the Notice set forth general violations of the [Clean Water Act] at unspecified locations throughout *an over three-mile easement*" (emphasis added) (citing the Township's summary judgment filings)), for purposes of deciding this appeal we assume the truth of the Township's representation during summary judgment proceedings that the easement is three miles long.

from which the easement was taken is largely undeveloped and "thickly wooded."  D. Ct. Dkt. 41-1, at 3 ¶¶ 20–22.

Two decades later, in 2015, a hiker[5] who was traversing the Estate's property discovered that portions of the underground sewer line no longer remained underground.  He passed along his discovery to the president of Shark River Cleanup Coalition, James McNamara, and the two of them together then visited the site of the protruding sewer line.

After learning of the exposed line from McNamara, the Cleanup Coalition decided to investigate.  In April 2016, its counsel submitted a public records request to the Township, requesting: "All documents creating [the] sanitary sewer easement on [the Estate's] property, evidencing [the] installation of [the] sanitary sewer on [the] property, evidencing maintenance of [the] sanitary sewer on [the] property for the period 2000 to present." JA-V1 00440.  After a back-and-forth with the Township's Director of Engineering and Planning, who informed the Coalition's counsel that the Township did not possess the requested records, the Cleanup Coalition obtained some of the sought-after records from Monmouth County.

While considering whether to file a citizen suit, the Cleanup Coalition dispatched McNamara to reexamine the sewer line condition.  When he attempted, by himself, to return to the site in question in July 2016, McNamara "got lost" at first, but he "kept on plugging along" and eventually located

---

[5] The hiker was never identified by name in the litigation.

the exposed sewer line.  JA-V1 00159–00160.  McNamara then photographed the sewer line condition on his cell phone and presented the photos to the Cleanup Coalition's membership.

Subsequently, in October 2016, the Cleanup Coalition directed its counsel to prepare and serve the Township and the Estate with a Notice of Intent to Commence Suit under the Clean Water Act's citizen-suit provision.

## B.

The Cleanup Coalition's Notice alleged that, due to the failure of the Township and the Estate to take preventative measures, "historic and continuing" erosion of the ground surrounding the buried sewer line released "large areas of sand"[6] into the nearby Shark River Brook, a tributary of the Shark River.  JA-V1 00020, 00024.  According to the Notice, the erosion resulted in "[s]everal sections" of the buried line becoming exposed such that they were "'flying' in the air without support."  JA-V1 00020.

The Notice further contended that the release of the fill surrounding the sewer line into the Shark River Brook violated the Clean Water Act, although it did not specify the section of

---

[6] The Clean Water Act defines "pollutant" to include "solid waste" and "sand."  33 U.S.C. § 1362(6).  The Cleanup Coalition's expert would later opine that the erosion appeared to release "a solid waste-like material, maybe an ID27, consisting of brick, plastic," and possibly "asphalt," into the Shark River Brook.  JA-V2 00620.

the Act that had allegedly been violated. By contrast, the Notice made a full page of references to various New Jersey statutes and to several provisions of the New Jersey Administrative Code, without explaining how those state statutes and regulations related to its citizen suit. It was not until later in the litigation that the Cleanup Coalition explained that it was claiming that the release was an unauthorized discharge of pollutants in violation of 33 U.S.C. § 1311(a)—what the Township has referred to as a "general violation" of the Clean Water Act. Township's Br. at 22.

The Notice also failed to provide the exact, or even approximate, location of the sewer line's exposed condition. But it did point out that, according to Monmouth County's deed records, the sewer line easement recorded by the Township was 25-feet wide, "run[ning] from Campus Parkway in an easterly[7] direction across the [Estate's] Property to the Garden State Parkway over 3.15 miles (16,341 feet) distant." JA-V1 00019.

---

[7] Although the record before us is unclear, it appears that in one unsuccessful attempt to locate the site of the alleged violation, the New Jersey Department of Environmental Protection ("NJDEP") inspector and a representative of the Estate who searched for the site began their attempt moving in a *westerly* direction. JA-V2 00686 (deposition testimony of the NJDEP inspector, who explained that the mine operator contracting with the Estate, who accompanied him during one attempt, told him to head "west" to reach the sewer line pump station).

And, in a section describing the "dangerous condition" created by erosion of the fill surrounding the sewer line, the Notice promised that photos of the condition would be "available upon request." JA-V1 00020. Much to the Township's and the Estate's consternation, the Cleanup Coalition's counsel did not respond to either Defendant's requests for the photos. Neither did counsel offer a justifiable excuse for failing to do so. It was not until the parties' initial litigation conference, which took place several months after the Coalition had filed suit in federal court, that the Cleanup Coalition provided the photos.

Proceeding without the benefit of the photos, representatives of the Township and the Estate tried and failed on several occasions to locate the site in question, although the Cleanup Coalition disputes the thoroughness of their searches. An inspector from the NJDEP, who was responsible for investigating the sewer line condition described in the Cleanup Coalition's notice, was also unable to find the site during his first few attempts.[8]

Yet the NJDEP inspector testified that he started his unsuccessful searches from the inaccessibly wooded side of the Estate's property, which led into impassible sections of the path along the sewer line easement. Had he started his earlier searches from the other end of the property, as he did when he eventually located the site of the exposed sewer line, it appears

[8] The inspector indicated in his deposition that his priority during one attempt was inspecting an active mine site on another part of the Estate's property.

10

that locating the site would have been much easier. According to the inspector, had the Township's and Estate's representatives begun their searches from the road on the other end of the easement, and "[h]ad they walked the easement" from there, "they certainly would have seen the exposed pipe." JA-V2 00716–17. Although the photos he eventually received gave him a "much narrower search area," it was learning the right starting point for his walk along the easement—starting from the "east side of the haul road" instead of from the pump station—that allowed him to locate the site of the sewer line condition. JA-V2 00710–11.

When the Township and the Estate were unable to locate the sewer line condition described in the Notice, and after their requests for the photos of the site were met with no response, neither Defendant took further action. The Estate's executor "figured [the sewer line condition] couldn't be too bad" if the Cleanup Coalition was not going to send him "a picture." JA-V2 00825. The Township's engineer concluded "there was nothing . . . further to do" if the Cleanup Coalition would not respond to his request for the photos. JA-V2 00788.

C.

In October 2017, a year after serving its pre-suit Notice, the Cleanup Coalition sued the Township and the Estate in federal court, alleging a Clean Water Act violation relating to the same sewer line condition it complained of in its Notice to Defendants. The Complaint was materially the same in content as the Notice, down to its general invocation of the entire Clean

11

Water Act in lieu of a reference to any specific provision of the Act.

As was the case with the Cleanup Coalition's Notice, the Complaint failed to provide the specific or approximate location of the alleged violation. Yet even though the Complaint's content was essentially the same as the Notice's, and even though the Complaint failed to include the alluded-to photos of the sewer line condition, the Township was soon able to locate the site in question within weeks of being sued.

On November 1, 2017, after the Cleanup Coalition had served its Complaint on Defendants earlier that day, Township employees confirmed with one another that the Township had never received the photos of the sewer line condition it had requested from the Cleanup Coalition. On November 17, 2017, apparently without the benefit of the Cleanup Coalition's photos, two other Township employees "found the site." D. Ct. Dkt. 41-1 at 32 ¶¶ 144–45.

D.

During the litigation, the parties took substantial discovery not only on the merits of the Cleanup Coalition's claim but also on the sufficiency of its Notice. On Notice-related matters, the parties deposed the NJDEP inspector, who by then had retired from the NJDEP and joined the Cleanup Coalition's board of trustees; representatives from the Township and the Estate; and the parties' expert witnesses.

Concurrently, the parties developed and implemented a plan to remediate the complained-of section of the sewer line

12

that both sides agreed was suspended in the air. In 2019, the Township completed its work under the plan. The Cleanup Coalition does not contest that the Township fixed the portion of the sewer line that protruded from the ground. Its only remaining dispute with Defendants is with respect to their alleged failure to "take any action to address the contaminated soils discharged into the Shark River" or to "prepare or circulate a proposal for future inspection and maintenance of the remediation site." D. Ct. Dkt. 41-1 at 37–38, ¶¶ 175-76.

In the last quarter of 2020, the parties briefed cross-motions for summary judgment on both notice and merits issues. In granting summary judgment for Defendants, the District Court reached only the adequacy of the Cleanup Coalition's Notice. It determined that the Cleanup Coalition's Notice was defective in failing to identify the complained-of site's location along the "over three-mile easement." *Shark River Cleanup Coal.*, 2021 WL 1712310, at \*7. Because the Cleanup Coalition did not provide a more specific location, and because it did not respond to Defendants' requests for additional information, the District Court concluded that the Cleanup Coalition's Notice offended the policy of the Clean Water Act's notice provision by failing to provide Defendants with "enough information to bring itself into compliance with the Act." *Id.* at \*6–7.[9]

---

[9] In addition to deeming the Notice insufficient for failure to adequately describe location, the District Court concluded that the Notice's failure to specify the dates of the alleged violation also justified dismissal for failure to provide sufficient notice.

13

Accordingly, the District Court dismissed the Cleanup Coalition's Clean Water Act claim for failure to provide sufficient notice.  This timely appeal followed.

II

Sufficiency of a citizen-suit notice is a legal question: one that we have characterized as whether a "jurisdictional prerequisite" has been satisfied.[10]  *Hercules*, 50 F.3d at 1251.

*Shark River Cleanup Coal.*, 2021 WL 1712310, at *7 n.15. Neither Defendant raises the Notice's description of the dates of the alleged violations as a basis for affirmance. Accordingly, we do not reach the issue.

[10] The statutory notice requirement in 33 U.S.C. § 1365(b) is not explicitly framed in terms of jurisdiction, and in fact it follows 33 U.S.C. § 1365(a), which is the subpart of the statute that is labeled "jurisdiction."  Further, the requirements with respect to the notice's contents are set forth by EPA regulation, not by an act of Congress.  *See* 40 C.F.R. § 135.3(a).

Although we recognize the tension between our previous characterization of the notice requirement as jurisdictional and subsequent instruction from the Supreme Court regarding the proper application of the "jurisdictional brand," *Henderson ex rel. v. Shinseki*, 562 U.S. 428, 435 (2011) (citation omitted), we note that it would make no difference in this appeal whether notice is better characterized as quasi-jurisdictional, *e.g.*, *Lockett v. EPA*, 319 F.3d 678, 682 (5th Cir. 2003) (characterizing the notice requirement as "more procedural

14

So we apply *de novo* review to the District Court's dismissal[11] of the Cleanup Coalition's action for failure to provide

than jurisdictional"). Adequacy of notice is a legal question even if it is not strictly jurisdictional. *E.g.*, *Gaston Copper Recycling*, 629 F.3d at 400 (describing sufficiency of notice as a "legal defense").

The question of whether notice is jurisdictional would matter only if Defendants were invoking jurisdictional arguments' unique immunity from attack on grounds of forfeiture or waiver. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." (citation and quotation marks omitted)). Here, however, there is no question that Defendants have preserved their notice arguments.

[11] We construe the District Court's dismissal of the Cleanup Coalition's action, for failure to provide sufficient notice, as one pursuant to a Rule 12 motion to dismiss, although Defendants pursued their notice arguments in motions for summary judgment. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006) (construing a party's filing by its "substance," not its "form").

A sufficiency-of-notice defense should be pursued instead via a Rule 12(b)(1) motion to dismiss because we have deemed notice jurisdictional. Even if notice is characterized as quasi-jurisdictional, a Rule 12(b)(6) motion would be the better vehicle for raising a sufficiency-of-notice defense because

15

adequate notice. *See*, *e.g.*, *ONRC Action v. Colum. Plywood, Inc.*, 286 F.3d 1137, 1142 (9th Cir. 2002) (reviewing "the citizen suit notice *de novo*" for compliance with 40 C.F.R. § 135.3).

Because the parties have taken discovery on the sufficiency of the Cleanup Coalition's Notice—sufficiency being a "functional, fact-dependent, and case-specific inquiry," *Paolino*, 710 F.3d at 34, notwithstanding its legal nature—we review Defendants' attack on the Cleanup Coalition's Notice as a "factual challenge." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (discussing standard for factual challenges to subject matter jurisdiction). In doing so, we as an appellate panel "weigh the evidence" with respect to the Notice's sufficiency. *Id.*; *see also Paolino*, 710 F.3d at 36.

III

With respect to the Notice's description of the location of the alleged violation,[12] we apply *Hercules* and conclude that the Notice "include[d] sufficient information to permit

---

notice is "'a mandatory, not optional, condition *precedent* for suit[.]'" *Hercules*, 50 F.3d at 1249 (quoting *Hallstrom*, 493 U.S. at 26) (emphasis added).

[12] In its answering brief, the Estate raises only insufficiency of the Notice with respect to location as a basis for affirmance, whereas the adequacy of the Notice's description of the location is one of several grounds for affirmance presented by the Township.

16

[Defendants] to identify . . . the location of the alleged violation[.]" 50 F.3d at 1247 (quoting 40 C.F.R. § 135.3(a)). Because the alleged violation was located along the Township's underground sewer line on an easement taken through eminent domain from the Estate, we hold Defendants to what should have been their "superior ability to ascertain the location[] of [the violation] that might be at issue."[13] *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 519 (9th Cir. 2013). Although we note that the parties have not settled the Defendants' respective obligations to inspect the fill surrounding the sewer line, it seems likely under New Jersey law that the Township would have "an implied right to do what is reasonably necessary" to maintain the line, *Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 211 (3d Cir. 2007) (quoting *Tide-Water Pipe Co. v. Blair Holding Co.*, 202 A.2d 405, 412 (N.J. 1964)), and that the Township would have the responsibility for its maintenance in light of its acquisition of the easement by eminent domain.[14] Accordingly, the Cleanup

---

[13] Like our concurring colleague, we credit the Township and Estate with having searched in good faith for the site of the alleged violation. *See* Concurrence, *infra*. We merely hold that, under the circumstances of this case, they should have been able to locate the site in question because it was along the Township's own easement over the Estate's property. It makes no difference that the Cleanup Coalition had better access to the Township's easement records than did the Township itself.

[14] *See Alexander v. Nat'l Fire Ins. of Hartford*, 454 F.3d 214, 223 (3d Cir. 2006) ("[W]hen there is any ambiguity or uncertainty about an easement grant, the surrounding

Coalition's reference to the public records of the easement was "enough"—if just barely—to permit Defendants, particularly the Township, to find the location in question. *Hercules*, 50 F.3d at 1248.

The Township's own conduct is strong evidence of the Notice's sufficiency with respect to location. After the Cleanup Coalition filed suit, the Township found the site of the alleged violation in a matter of weeks—with no more information on its location than the reference to the entire easement found in both the Notice and the Complaint. The post-Complaint actions undertaken by the Township were not, to use the words of the Seventh Circuit, "the actions of a [defendant] that has not received enough information for purposes of the statutory notice provisions of the [Clean Water] Act." *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997).

We do not rest our holding on the Township's post-Complaint actions alone. We also note that, notwithstanding the site in question's location within a heavily wooded area along a long easement, the Notice required no more of Defendants than was asked of other citizen-suit defendants by notices deemed sufficient by other circuits and district courts. In *Ecological Rights Foundation*, the notice alleged violations

circumstances, including the physical conditions and character of the servient tenement, and the requirements of the grantee, play a significant role in the determination of the controlling intent [with respect to the duty to repair]." (quoting *Hyland v. Fonda*, 129 A.2d 899, 904 (N.J. Super. Ct. App. Div. 1957)).

18

over "four counties" without identifying each offending location, 713 F.3d at 519, yet the Ninth Circuit determined that the notice sufficiently described the locations, "especially" because the plaintiff identified "representative" sites and "referenced [the defendant's] superior ability to ascertain the locations of other [sites] that might be at issue." *Id.*; *cf. Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 77 (1st Cir. 2021) (concluding that a notice that did not include the "precise origin" of the alleged release of pollutants was sufficient because the defendant possessed "maps, plans, and investigative tools to trace the source of the [alleged violation]"). Similarly, in *Benham v. Ozark Materials River Rock, LLC*, the Tenth Circuit concluded that a notice sufficiently apprised the defendant of the locations of the alleged violations in a wetlands area because it referred to "a road [along the wetlands] identified by description and aerial photograph." 885 F.3d 1267, 1274 (10th Cir. 2018). And, in a case bearing close factual resemblance to this dispute, a district court held that a notice that referred simply to "numerous discharge[] points" in an entire underground water system on a 31-acre facility sufficiently notified the defendants of the locations of the alleged violations. *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1051 (N.D. Cal. 2017). We decline to hold the Cleanup Coalition to a standard more demanding than that applied by our sister courts. *See Gaston Copper Recycling*, 629 F.3d at 399–400 ("Although the notice requirements for citizen suits brought under the Clean Water Act are strict and specific, we nevertheless agree with the cautionary reasoning of other circuits warning against an overly technical application of regulatory requirements." (citing *Hercules*, 50 F.3d at 1248; *Waterkeepers*, 375 F.3d at 917)).

19

We do not disagree with our concurring colleague that the Cleanup Coalition could have provided additional location information that would have been "helpful" to Defendants. *Hercules*, 50 F.3d at 1247. The photos of the sewer line condition would have at least narrowed Defendants' searches for the site of the alleged violation, and the Cleanup Coalition's failure to supply them to Defendants upon request leaves us at a loss for why it decided against such a simple act of professional courtesy. We also recognize that, because of the ubiquity of technology capable of "effortlessly" collecting "cell phone location information," *Carpenter v. United States*, 138 S. Ct. 2206, 2216 (2018), it probably would not have been burdensome for the Cleanup Coalition to have taken the site's geographic coordinates. We take the Cleanup Coalition at its word, though, that McNamara, who photographed the site in question, was unaware that smart phones are capable of recording geolocation data. 3d Cir. No. 21-2060, Dkt. 44 (the sworn declaration of the Cleanup Coalition's president that he "had no knowledge whatsoever about any photo location feature that might be on [his smart phone]").[15] Finally, we note

---

[15] Under the circumstances of this case, we are willing to excuse the Cleanup Coalition's failure to return to the site and record the geographic coordinates of the site through other means, as the Estate suggested during oral argument that it could have done. Oral Argument at 1:10:09–1:10:16 ("Even if he only had a compass, or a sundial, a bearing and distance from the pump house would have been invaluable.").

The Estate, after all, represented at argument that it sought to press trespassing charges against the hiker who informed the

20

that nothing prevented the Cleanup Coalition from offering to bring Defendants to the alleged violation's location.

Yet our focus must be on the Notice itself. Its description of the location of the site in question satisfied 40 C.F.R. § 135.3(a)'s minimum requirements. Although it would have been courteous and helpful for the Cleanup Coalition to have offered greater assistance to Defendants, we observe that the law is often limited in its ability to enforce norms of "professional collegiality" among litigants, even though "[t]he extension of normal courtesies and exercise of civility expedite litigation and are of substantial benefit to the administration of justice." *Marcangelo v. Boardwalk Regency*, 47 F.3d 88, 90 (3d Cir. 1995).

IV

Although the Notice was sufficient to permit Defendants to locate the site of the alleged violation, it was defective in another, key respect: It did not "provide *enough* information to enable the *recipient*, *i.e.*, [Defendants], to identify the specific effluent discharge limitation which has been violated, including the parameter violated[.]" (first emphasis added))." *Hercules*, 50 F.3d at 1248 ("We read the

---

Cleanup Coalition of the location of the alleged violation. *Id.* at 1:10:51–1:11:04 ("To be candid, my client was so upset about being dragged into this lawsuit that he asked me to try to find the identity of the hiker, preferably within the one-year statute of limitations, to charge that person, he or she, with trespassing.").

regulation to require just what it says[.]"). Thus, we will affirm the dismissal of the Cleanup Coalition's citizen suit on this alternative ground—although it was not reached by the District Court. *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 872 (3d Cir. 2022) ("We may affirm on any basis supported by the record[.]" (internal quotation marks and citation omitted)).

We acknowledge that the citizen-suit regulation only requires notices to "include sufficient information *to permit the recipient to identify* the specific standard, limitation, or order alleged to have been violated [and] the activity alleged to constitute a violation," 40 C.F.R. § 135.3(a) (emphasis added), and so a notice is not necessarily deficient under the regulation for failure to invoke a section or part of the Clean Water Act. We also acknowledge that not all citizen groups will retain counsel at the time of preparing a notice of intent to commence suit under the Clean Water Act; under such circumstances, we would "liberally construe" the citizen group's "*pro se* filings." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021). Here, however, the Notice was prepared by counsel. And it referred not just to the entire Clean Water Act but also to many unrelated New Jersey statutes and regulations. Thus, the Cleanup Coalition's Notice was not "enough" to apprise Defendants of its intention to claim a general violation of 33 U.S.C. § 1311(a), *Hercules*, 50 F.3d at 1248—an intention it did not make clear until later in this litigation.

If the Cleanup Coalition's Notice "contain[ed] individual sentences . . . that g[a]ve Defendants some appropriate information" that would have permitted them to identify the alleged violation, those sentences were "deeply buried" within a plethora of references to New Jersey statutes

22

and regulations bearing no relevance to the Cleanup Coalition's case. *Karr v. Hefner*, 475 F.3d 1192, 1206 (10th Cir. 2007). We reiterate that a citizen-suit notice must provide the "alleged violator . . . with enough information to be able to bring itself into compliance." *Hercules*, 50 F.3d at 1249. Here, because the Notice left Defendants guessing as to the claimed violation—because it presented a legal theory vague enough to encompass "all possible attacks" on the defendant's conduct, *ONRC Action*, 286 F.3d at 1143—it did not adequately apprise Defendants of "the specific standard, limitation, or order alleged to have been violated." 40 C.F.R. § 135.3(a).

The Notice did little to explain what part of the Clean Water Act was allegedly being violated. Accordingly, it denied Defendants a fair opportunity to determine how they should respond to the concerns then raised by the Cleanup Coalition.

VI

The Notice provided enough information for Defendants to locate the site of the alleged violation, yet its description of the alleged violation left the Defendants guessing as to what section or sections of the Clean Water Act they had allegedly violated. Thus, we will affirm the dismissal of the Cleanup Coalition's citizen suit for failure to provide sufficient notice.

23

*Shark River Cleanup Coalition v. Township of Wall, et al.*,
No. 21-2060

_____

HARDIMAN, *Circuit Judge*, concurring.

The Court holds that Shark River Cleanup Coalition sent the Township of Wall and the Estate of Fred McDowell, Jr. a Notice of Intent to Commence Suit (Notice) under the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, that failed to "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated." 40 C.F.R. § 135.3(a). I agree with my colleagues that because the "Notice did little to explain what part of the Clean Water Act was allegedly being violated," it "denied Defendants a fair opportunity to determine how they should respond to the concerns then raised by the Cleanup Coalition." Op. at 23. Consistent with our precedent, Judge Smith's cogent opinion for the Court clarifies that such Notice must "provide enough information to enable the *recipient . . .* to identify the specific effluent discharge limitation which has been violated, including the parameter violated." *Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir. 1995). It cannot leave defendants "guessing as to the claimed violation." Op. at 23.

My colleagues correctly note that Notice need not "identify every detail of a violation." *Hercules*, 50 F.3d at 1247 ("While there is no doubt that such detailed information is helpful to the recipient of a notice letter in identifying the basis for the citizen suit, such specificity is not mandated by the regulation."); Op. at 4–5. But "[a] general notice letter that fails sufficiently to inform its recipients of the violations upon

which a citizen intends to bring suit will not conform to the Act's requirement." *Hercules*, 50 F.3d at 1248. In lieu of a "specific" standard or limitation, the Cleanup Coalition's Notice provided citations to the *entire* Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and the *entire* federal code section for EPA regulations governing water quality standards, 40 C.F.R. § 131.[1] The Notice also makes passing reference to sundry New Jersey environmental protection laws and administrative code sections implicating surface water quality.[2] Those federal and state laws cover nearly two thousand pages. It should go without saying that such vast expanses of federal and state codes cannot be "the provision of law alleged to be violated."

---

[1] When asked "where in the Notice is the specific standard referenced," the Cleanup Coalition's counsel admitted, "*There is no specific standard* inasmuch as it is a violation of the statute." Oral Argument at 45:44. Counsel further acknowledged: "*The standard is not in the Notice.*" Oral Argument at 46:38. To his credit, counsel confessed that he "did not have the regulation" when he drafted the Notice. Oral Argument at 44:40.

[2] The state environmental protection laws cited in the Notice include: (1) Water Quality Planning Act, N.J. Stat. Ann. § 58:11A-1 *et seq.*; and (2) Water Pollution Control Act, *id.* § 58:10A-1 *et seq.* App. 23. The state administrative code sections cited include: (1) Surface Water Quality Standards, N.J. Admin. Code § 7:9B; (2) Pollutant Discharge Elimination System, *id.* § 7:14A; (3) Freshwater Wetlands Protection Act, *id.* § 7:7A; (4) Coastal Zone Management, *id.* § 7:7; (5) Flood Hazard Area Control, *id.* § 7:13; (6) Stormwater Management, *id.* § 7:8; and (7) Water Quality Management Planning, *id.* § 7:15.

*Hercules*, 50 F.3d at 1247 & n.10. By definition, those general citations do not provide "sufficient information" for recipients to "identify the *specific* standard, limitation, or order alleged to have been violated." 40 C.F.R. § 135.3(a) (emphasis added); *Hercules*, 50 F.3d at 1248.

\* \* \*

Although my colleagues and I agree that the Notice failed to describe the standard violated, we part ways about the Notice's sufficiency as to location. They conclude that "the District Court erred under *Hercules* by requiring the Cleanup Coalition to provide more than what was 'enough' information for Defendants to identify the location of the alleged violation." Op. at 5 (quoting *Hercules*, 50 F.3d at 1248). In my view, the District Court did not err when it held that the Notice insufficiently described "the location of the alleged violation." 40 C.F.R. § 135.3(a).

"The purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 175 (2000) (cleaned up); *see Hercules*, 50 F.3d at 1249 (same). In this regard, the Cleanup Coalition's Notice was an utter failure. The Township's administrator explained the situation well:

> If somebody had the decency to tell us we could have corrected it before all this energy went through and a nonprofit organization incurred the cost of an attorney and so on and so forth because I would assume the goal was to get a potential problem fixed, not to have this lag on

3

for years and run up bills on both sides of the equation.

App. 747–48. The New Jersey Department of Environmental Protection (NJDEP) agreed. Had the Township and the Estate known the location of the alleged violation, they would have corrected the problem. App. 673, 703 ("I [the NJDEP employee] had two cooperative entities that I thought would be able to fix it. Never dreamed it was going to come to this.").

My colleagues conclude that the Township and the Estate should have been able to identify "the location of the alleged violation," based on the Cleanup Coalition's Notice, because they controlled the sewer easement. 40 C.F.R. § 135.3(a); Op. at 17–18 ("the Cleanup Coalition's reference to the public records of the easement was 'enough'—*if just barely*—to permit Defendants, particularly the Township, to find the location in question" (emphasis added) (quoting *Hercules*, 50 F.3d at 1248)). They do so despite several admissions by Cleanup Coalition members about the Notice and its many deficiencies. For starters, the NJDEP employee tasked with inspecting the Estate's property—who is now a member of the Coalition—admitted that the Notice provided no "specific site" for the alleged violation. App. 699. He also had trouble following the sewer line. App. 680 ("You couldn't follow the sewer line at various points. . . . I just think it was inaccessible."). That civil servant's experience was typical. In fact, the Cleanup Coalition's president "got lost" trying to find the exposed sewer pipe. App. 159. Like the NJDEP employee, he admitted that the Notice provided no "exact location." App. 396. And the Cleanup Coalition's attorney admitted that the Notice, which he drafted, could not have provided more specific information about the location of the alleged violation:

4

"We didn't have any other specific information." Oral Argument at 1:07:07.

So what *did* the Notice say about the location of the alleged violation? Only that it was located on the Estate's 484.97-acre, densely wooded property, along the Township's three-mile-long, 25-foot-wide easement. Any information relevant to identifying the location, or nature, of the alleged violation can be found in only one paragraph of the Cleanup Coalition's seven-page letter. That paragraph reads, in full:

> Several sections of the sewer pipe have been undermined and are "flying" in the air without support. (Photos available upon request). This condition threatens the structural integrity of the active sanitary sewer pipe within a short reach of the Shark River Brook. Furthermore, in other locations, due to the installation of the pipe and failure to maintain the easement and the activities being conducted by the owner of the property, large areas of sand have "washed out" and infiltrated and discharged into the Shark River Brook. These conditions are violations of the Clean Water Act.

App. 20. Woodland erosion left a section of the Township's sewer pipe exposed—not damaged or leaking, though partly suspended above the ground. But the Notice fails to specify where the exposed section could be found. The Notice also refers to mysterious "other locations" where sand had "discharged into the Shark River Brook." App. 20. Those locations remain unidentified.

5

The lack of disclosure just described reflects the Cleanup Coalition's conduct throughout this dispute. From the very beginning, requests from the Estate's executor and the Township's chief engineer for "the photos and locations of the areas of concern," App. 850, 856—supposedly "available upon request," App. 20—were met with silence from the Cleanup Coalition's attorney. Within two weeks of receiving the Notice, the Estate's executor wrote to counsel for the Cleanup Coalition to request "copies of the photographs" mentioned in the Notice and "any information you can give me regarding where the photographs were taken." App. 850. Counsel chose not to respond, given his policy of "not communicat[ing] with private parties on matters that are the subject of threatened or actual litigation." App. 847. He "could . . . have advised someone" else to respond (*e.g.*, any other member of the Cleanup Coalition), but chose not to. *Id.* The Estate's executor sent a second letter informing the Cleanup Coalition's attorney that "the manager of mining operation [on the Estate's property] has walked the length of the easement . . . and did not see the conditions you mentioned in your [notice] letter. Therefore, it is imperative that I have copies of your photos and the location where they were taken to continue our investigation." App. 860. Again, counsel failed to respond, leading the Estate's executor to reasonably conclude the Notice was a non-issue.

Wall Township likewise struggled to locate the alleged violation based on the Notice. The same month it received the Notice, the Township dispatched employees to search for exposed pipe along the easement. After multiple searches, Township employees found nothing. The Township's Engineer wrote the Cleanup Coalition's attorney requesting "photos and locations of the areas of concern," App. 856, but

6

counsel never responded. The Township kept searching, to no avail. As one employee testified: "We were on a wild goose chase hunting all along the banks of the Shark River looking for a broken pipe."[3]

Any notion that the Estate or the Township did not make good-faith efforts to locate the exposed pipe is belied by the fact that the NJDEP could not locate the alleged violation based on the Notice. In February 2017, an NJDEP employee inspected the McDowell property. During his initial search, the employee could not locate any exposed sewer pipe along the easement. It took four site visits, along with "three pictures and a little short description [from the Cleanup Coalition's president] of where it was," for the employee to locate the exposed pipe. App. 672–74. When asked why he "didn't . . . know where it was" earlier, the employee testified, "[b]ecause all I had was the . . . Notice of Intent." App. 672.

My colleagues consider the provision of "additional location information" and "photos of the sewer line condition" to be "a simple act of professional courtesy." Op. at 20. But the Notice claimed those photos were "available upon request," implying their necessity for anyone seeking to locate the exposed pipe. App. 20. Counsel's "failure to supply them to

---

[3] The Cleanup Coalition's president was asked, "don't you think if you really wanted Wall Township to know [the location], you would have had somebody take them out and show them where the location was?" App. 393. His response: "We could have done that, but we didn't," *id.*, based on "advice of counsel," App. 325. He also admitted that the Cleanup Coalition "took the advice of counsel that there was [to be] no response to [the Estate's] letters" requesting the location. App. 319.

Defendants upon request" leaves me too "at a loss." Op. at 20. But counsel's obfuscation went beyond a lack of "professional courtesy." *Id.* It precluded his client from achieving its goal short of litigation. "The purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Friends of the Earth*, 528 U.S. at 175; *see Hercules*, 50 F.3d at 1249. The "Township's own conduct" may offer "strong evidence of the Notice's sufficiency with respect to location," Op. at 18, but so does counsel's lack of disclosure and its effect on this case. If the Cleanup Coalition had provided "additional location information" and "photos of the sewer line condition," Op. at 20, the Township and the Estate could have remedied the erosion issue years ago, rendering "unnecessary" this citizen suit. *Friends of the Earth*, 528 U.S. at 175. Yet here we are.

In sum, I would have affirmed the District Court on the sufficiency of notice relative to "the location of the alleged violation." 40 C.F.R. § 135.3(a). The Cleanup Coalition's Notice was deficient in this regard, and the District Court rightly recognized it as such. But the Notice also failed to "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated." *Id.* Because "its description of the alleged violation left the [Township and Estate] guessing as to what section or sections of the Clean Water Act they had allegedly violated," Op. at 23, the Notice was deficient. Subject to the reservations expressed here, I join Judge Smith's opinion for the Court, except as to Part III.

8